**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alfredo RIOS, Defendant-Appellant.**

No. 87–1344.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1988.

Decided March 18, 1988.

Kenneth R. Sasse, Detroit, Mich., Joseph I. Stone (argued), New York City, for defendant-appellant.

Michael C. Leibson (argued), Asst. U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Before LIVELY, Chief Judge; JONES and BOGGS, Circuit Judges.

PER CURIAM.

Defendant-appellant, Alfredo Rios, appeals his jury conviction for conspiracy to import cocaine. For the reasons set forth below, we find his arguments to be without merit and, therefore, affirm his conviction.

## I.

On April 11, 1986, Alfredo Rios, the defendant, along with twenty-three others, was indicted by a federal grand jury sitting in the United States District Court for the Eastern District of Michigan. Rios was charged only in Count Two of a thirteen count indictment. Count Two alleged a conspiracy to import cocaine in violation of 21 U.S.C. §§ 952, 960 and 963 (1982). Count Two specifically alleged:

1.) That from on or about January, 1981, until on or about December, 31, 1984, in the Eastern District of Michigan and elsewhere, Stephen A. Hagerman, John H. McCann, III, Roberto C. Jaramillo, Michael Canelas, Jose Cruz and Alfredo Rios, defendants herein, did knowingly, willfully and unlawfully combine, conspire, confederate and agree together and with other persons, both known and unknown to the grand jury, to commit an offense or offenses against the United States, that is, to knowingly, intentionally, and unlawfully import into the United States cocaine, a Schedule II Controlled Substance, contrary to Title 21, United States Code, Section 960; all in violation of Section 963, Title 21, United States Code.

2.) It was part of said conspiracy that Roberto C. Jaramillo would use his position as a Columbia [sic] diplomat to assist Stephen A. Hagerman and John H. McCann, III in taking suitcases and other containers of cocaine through various Customs stations without the suitcases or containers being searched by Customs officials.

3.) It was further part of said conspiracy that Alfredo Rios, Roberto C. Jaramillo, Michael Canelas, Fernando Canelas and Jose Cruz would either act as sources of supply or introduce Stephen A. Hagerman and John H. McCann, III to sources of supply of cocaine in South America.

J.App. at 8–9.

As a result of various pretrial dispositions, including dismissals and guilty pleas, Rios was the only person named in Count Two to stand trial.[1]

On November 3, 1986, Rios's jury trial commenced before the Honorable Barbara K. Hackett. On November 12, 1986, a mistrial was declared when the jury was unable to reach a verdict.

During this trial, various motions were made by the defendant concerning the admission of co-conspirator statements. These statements concerned Rios's involvement in the conspiracy and were allegedly made by co-defendant Stephen Hagerman to John McCann and Michael Canelas, two co-defendants who were testifying for the government pursuant to plea agreements. Judge Hackett received testimony from McCann and Canelas outside the jury's presence. Upon receiving that testimony, she ruled that the government had shown, by a preponderance of the evidence, that a conspiracy existed, that Rios was a member thereof and that the statements in question were made in furtherance of the conspiracy.

Prior to Rios's retrial, both parties stipulated that the testimony and rulings concerning the admissibility of the co-conspirator statements in the first trial would be incorporated into the second trial so as to avoid unnecessary repetition of testimony.

Rios's second trial began on January 6, 1987. At trial, the government once again alleged that Rios had conspired with Stephen Hagerman and others to import cocaine into the United States. Evidence was introduced which indicated that sometime before February 1982, Hagerman became involved in the importation of cocaine from Colombia. This activity allegedly began when John McCann, Hagerman's brother-in-law, requested Hagerman's assistance in developing sources for coal in South America. Hagerman agreed to help McCann with his expenses and to accompany him on his trips. McCann later learned that Hagerman intended to import cocaine from South America into the United States.

On their first trip to Colombia in January 1982, Hagerman and McCann brought back into the United States one kilogram of cocaine. Thereafter, Hagerman asked Anthony Peters, a friend, if he could identify anyone who might provide him with a South American "source." Peters stated that he had been dealing cocaine with an individual named Jose Cruz who had a source named Alfredo "Freddy" Rios. Peters agreed to ask Cruz to arrange a meeting between Hagerman, Cruz and Rios for the purpose of introducing Rios to Hagerman as a potential source of South American cocaine. In February 1982, such a meeting occurred in New York.

Testimony provided at trial by Peters and Cruz established that a deal was struck at that meeting whereby Hagerman would go to South America and meet Rios who, in turn, would introduce him to a cocaine source. Cruz was supposed to make the necessary arrangements, but decided, at the last moment, not to take part in the transaction. Thus, Rios failed to meet Hagerman in South America. However, Cruz testified, he subsequently learned that Hagerman had, in fact, been successful in obtaining cocaine from Rios and his sources.

Thereafter, between February 1982 and October 1983, Hagerman and McCann

---

1. At the time of Rios's trial, Stephen Hagerman was pending extradition from Canada.

made several trips to Colombia where they brought back varying amounts of cocaine ranging from one to fifty kilograms. Based on several conversations he had with Hagerman, McCann testified that at least five of these trips were arranged by an individual identified as "Freddy." McCann testified that these conversations with Hagerman arose because of his concern for their safety. He stated that he wanted reassurance from Hagerman that the people with whom they were dealing would not rob or kill them. Hagerman told McCann that he had met Freddy in New York and had been reassured that Freddy and his people would deliver the cocaine without problems. He stated that Freddy was of Puerto Rican extraction and lived in New York. At a later date, Hagerman placed Freddy's phone number in McCann's personal telephone book. At trial, the evidence showed that the New York telephone number listed in McCann's personal book belonged to Estrella Lopez, the common law wife of Alfredo "Freddy" Rios.

McCann also testified that Hagerman told him that he had an arrangement with Freddy's source whereby Hagerman would pay for one-half of the drugs he wanted and take the rest on consignment and that he was also able to take an equal amount of drugs for Freddy or the people whom Freddy was representing. Hagerman told McCann that he had become the middleman between Freddy and Freddy's Colombian suppliers in that the drugs he and McCann picked up in Colombia were taken to Detroit where Freddy and/or his associates would pick up the portion earmarked for them.

In October 1983, Hagerman and McCann obtained another source of cocaine through Michael Canelas in Bolivia. During that month, Hagerman and McCann, with Canelas's assistance, imported approximately eighty kilograms of cocaine into the United States. Hagerman told McCann that Freddy would be receiving some portion of the Bolivian cocaine. Also, at some point after the October 1983 delivery, Hagerman met with Canelas in Michigan and told him he was unable to pay him because Freddy had not yet paid for the drugs and Freddy was

*the source* of the money for the portion of cocaine which had to be paid up front on the first Bolivian deal. Hagerman identified Freddy as living in New York and of a Puerto Rican background. Hagerman also told Canelas that Freddy was his best source in the United States as he was good for over 100 kilos of cocaine a month.

In September 1984, Hagerman, McCann and Canelas imported over 100 kilograms of cocaine from Bolivia to Monterrey, Mexico and on into Michigan. During this trip, Hagerman and McCann discovered that they were under investigation. McCann remained in Mexico while Hagerman returned to the United States. Hagerman, however, began to make departure plans.

Telephone records introduced into evidence at trial showed that Hagerman made many phone calls to Rios and vice-versa concerning the Bolivian shipments as well as their other deals. An ongoing relationship between the two was certainly demonstrated by the records introduced and the testimony given.

Prior to the submission of the case to the jury, Rios requested that the court instruct the jury on multiple conspiracies. The court gave the requested instruction to the jury informing them that they might *only* convict Rios if they found him guilty of the conspiracy charged and not some other conspiracy which might have been proven. Rios made no objection to the wording and/or form of the instruction.

On January 9, 1987, the jury began its deliberations. On January 12, 1987, the jury found Rios guilty as charged.

On March 30, 1987, Judge Hackett sentenced Rios to 15 years imprisonment and ordered him to pay a committed fine of $20,000. On the same day, the defendant filed a timely notice of appeal to this court.

## II.

■ Two issues are presented to us by the defendant for appellate review. We review both questions under limited standards. The question of

[w]hether single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury under proper instructions and to be considered on appeal in the light most favorable to the government. Even if there is a 'variance' in the proofs showing multiple conspiracies rather than a single conspiracy, reversal is required only where substantial rights of the appellants are involved.

*United States v. Grunsfeld,* 558 F.2d 1231, 1238 (6th Cir.), *cert. denied sub nom. Flowers v. United States,* 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977) (citations omitted). *See also United States v. Warner,* 690 F.2d 545, 549 (6th Cir.1982).

■ This determination, "in the light most favorable to the government," must be made without weighing the evidence or determining witness credibility. *United States v. Conti,* 339 F.2d 10, 13 (6th Cir. 1964). Thus, any argument relating to the credibility of the government's witnesses and the inconsistencies in their testimony is irrelevant to our determination. The fact that the government's witnesses were testifying under plea agreements was made known to the jury. In light of this evidence, the jury found some of their testimony credible. Having so found, it is not our function as a reviewing court to reverse that determination.

The second issue raised by the defendant is whether the lower court erred in admitting hearsay evidence as statements made "in furtherance" of a conspiracy.

It is well established "that, before the government can take advantage of the coconspirator exception to the hearsay rule, it must show by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant against whom the hearsay is offered was a member of the conspiracy and, (3) that the hearsay statement was made in the course and in furtherance of the conspiracy."

*United States v. Hamilton,* 689 F.2d 1262, 1268 (6th Cir.1982) (quoting *United States v. Vinson,* 606 F.2d 149, 152 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980)), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983). We review the district court's admission of certain co-conspirators' statements under an abuse of discretion standard. "This[, of course,] is the standard under which evidential errors of a trial court are tested on appeal." *United States v. Mahar,* 801 F.2d 1477, 1495 (6th Cir. 1986) (citing *Mitroff v. Xomox Corp.,* 797 F.2d 271, 275 (6th Cir.1986)).

### III.

Defendant first argues that the government proved two conspiracies in this case because there were two sources of cocaine, Colombia and Bolivia. He further alleges that he was not involved in the Bolivian conspiracy and that his conspiratorial agreement, if it existed, was only to be a source of the Colombian cocaine. Defendant states that if it is assumed that he was involved in the Bolivian deals, his involvement in that scheme was different than his role in the Colombian importation. These arguments are without merit.

As stated, we review this issue as a question of fact to be resolved by a jury under proper instructions and to be considered on appeal in the light most favorable to the government. *See United States v. Grunsfeld,* 558 F.2d 1231, 1238 (6th Cir.), *cert. denied sub nom. Flowers v. United States,* 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977). In this case, defendant requested and received a jury instruction concerning multiple conspiracies. The defendant does not allege error in the instruction; indeed, he made no objection to the instruction. Thus, the only question before us is whether or not, in the light most favorable to the government, a single conspiracy was shown.

This court has clearly set forth the applicable law and standards to be used in making this determination. In *United States v. Warner,* 690 F.2d 545 (6th Cir.1982), this court stated:

If an indictment alleges one conspiracy, but the evidence can reasonably be construed *only* as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant

can show that he was prejudiced thereby. In determining whether the evidence show[s] single or multiple conspiracies, we must bear in mind that the essence of the crime of conspiracy is agreement. "[I]n order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." However, ... a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy.

*Id.* at 548–49 (citations omitted) (emphasis added).

This court has also stated that:

[W]here a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn.

*United States v. Hamilton,* 689 F.2d 1262, 1268 (6th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983) (citation omitted).

The Fifth Circuit Court of Appeals has noted that a single conspiracy does not become multiple conspiracies simply because of personnel changes or because its members are cast in different roles, some more vital and more numerous than others. *See United States v. Bates,* 600 F.2d 505, 509 (5th Cir.1979).

▇ Pursuant to these principles, only one conspiracy was proven by the government in this case—*i.e.,* the conspiracy to import cocaine from South America.

This conspiracy, however, was comprised of several sub-agreements. Rios acted as the "source" for the Colombian importation while Canelas was the "source" for the Bolivian importation. Rios, however, acting as financier, was also involved in the Bolivian importation. Although the role was different, Rios was still a member of a conspiracy with an overall objective of cocaine importation from South America. Indeed, phone records introduced as evidence at trial show that there was an ongoing relationship between Rios and Hagerman well past the Colombian operation and no evidence exists to demonstrate that such a relationship was based upon anything other than a continuing narcotics business.

Therefore, because we conclude that there was no variance between the indictment and the proof presented, the defendant's claims are without merit. The jury was properly instructed, and the defendant made no objection, on single versus multiple conspiracies. It cannot be said that the evidence is such that a reasonable juror could *only* find that multiple conspiracies had been proven. In our view, it is reasonable to assume that Rios's actions were taken pursuant to one plan of importation of cocaine. Therefore, defendant's claims are without factual and legal support.

## IV.

Defendant's second argument concerns Judge Hackett's findings made pursuant to *United States v. Vinson,* 606 F.2d 149 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980), during Rios's first trial. These findings, which admitted certain statements into evidence under Fed.R.Evid. 801(d)(2)(E),[2] were incorporated into Rios's second trial.

The court held, after hearing testimony from John McCann and Michael Canelas outside the presence of the jury, that a conspiracy existed, that Rios was a member thereof and that the statements to be offered were made during the course of

---

2. Fed.R.Evid. 801(d)(2)(E) provides:

The following definitions apply under this article:

....

(d) **Statements which are not hearsay.** A statement is not hearsay if—

....

(2) **Admission by party-opponent.** The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

and in furtherance of the conspiracy. Rios claims that the statements were not made in furtherance of the conspiracy.

McCann testified that he became aware of Freddy's role in the conspiracy upon questioning Hagerman about their safety during a Colombian trip. Hagerman told McCann that the people with whom they were dealing were reliable and would not harm them. He told McCann that these people were Freddy's sources and that Freddy had assured him of these facts. Later, McCann testified, Hagerman informed him that Freddy was also involved in the sale of the Bolivian drugs and would take and sell some of the cocaine they brought back.

Canelas testified that he learned of Freddy's involvement in the conspiracy while trying to obtain payment for the first shipment of the Bolivian cocaine. Canelas testified that Hagerman told him the up front money for the cocaine was coming from Rios. Canelas indicated that he would not have continued in the operation if he had not been paid for this shipment. Hagerman also told Canelas that Rios was his best cocaine source in the United States and was good for about 100 kilos a month.

Defendant argues that these statements should not have been introduced into evidence. He alleges that such statements were only parts of conversations which did not further the goals of the alleged conspiracy. As such, he argues, they are not admissible as being "in furtherance" of the conspiracy. Defendant, however, takes too narrow a view of this requirement.

Numerous cases have set forth the types of statements which have been found to be "in furtherance" of a conspiracy. Assurances to co-conspirators that one has an outlet for goods have been held to meet the requirement. *United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir.1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983). Likewise, conversations designed to collect money also fall within the "in furtherance" rule. *Id.* This requirement is satisfied when a co-conspirator is apprised of the progress of the conspiracy or when the statements made are designed to induce his assistance, *United States v. Paone*, 782 F.2d 386, 391 (2d Cir.), *cert. denied*, ——— U.S. ———, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986), as well as when statements are "made to keep a conspirator abreast of a co-conspirator's activities, or to induce continued participation in a conspiracy, or to allay [his] fears...." *United States v. Layton*, 720 F.2d 548, 557 (9th Cir.1983), *cert. denied*, 465 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984). This court has held that statements designed to gain the trust and assurance of co-conspirators, to provide incentives for negotiations and to peak interest are also in furtherance of a conspiracy. *United States v. McLernon*, 746 F.2d 1098, 1105 (6th Cir.1984). Finally, statements of one co-conspirator identifying another co-conspirator as a source of narcotics have been held to meet the "in furtherance" requirement. *United States v. Carlson*, 547 F.2d 1346, 1362 (8th Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977).

We conclude that the statements offered by McCann and Canelas clearly fall within these rules. McCann sought assurance from Hagerman that it was safe to continue in the conspiracy. It can be inferred that were it not safe, McCann's activities would have ceased. Furthermore, we interpret Hagerman's statements to McCann about the Bolivian cocaine, and Rios's involvement therein, as assurances to McCann of an outlet for their goods.

Canelas and Hagerman's conversation arose in the context of an attempt to obtain payment for drugs. These statements clearly fall within the "in furtherance" requirement. Thus, the lower court did not abuse its discretion in admitting the co-conspirator statements as evidence.

Therefore, for all of the foregoing reasons, the appellant's arguments are without merit and his jury conviction is hereby AFFIRMED.