875 F.2d 868
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Stanley H. STOVACK, Defendant-Appellee.
 No. 88-1099.
 United States Court of Appeals, Sixth Circuit.
 May 10, 1989.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and EUGENE E. SILER, Jr., Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant Stanley Stovack appeals his conviction of making and subscribing false tax returns and making a false claim against the Government for a tax refund. The issue before us is whether there was sufficient evidence from which a rational jury could have found defendant guilty of filing false tax returns. For the reasons that follow, we affirm.
 
 I.
 
 2
 On March 18, 1987, Stovack was charged by a federal grand jury with four counts of making and subscribing false tax returns for the years 1980 through 1983 in violation of 26 U.S.C. Sec. 7206(1) (1982). He was also charged in two counts with making false tax refund claims against the Government for the years 1982 and 1983, in violation of 18 U.S.C. Sec. 287 (1982). A jury trial was conducted and, on October 30, 1987, Stovack was convicted of all counts. On January 12, 1988, Stovack was sentenced to a term of four years on the false claim counts and three years on the filing of false tax returns counts. His sentences were ordered to run concurrently.
 
 
 3
 Stovack is a self-described full-time gambler at Michigan area racetracks. The Government alleges that he was involved in a scheme known as "ten-percenting." Essentially, ten-percenting begins with a racetrack patron who wins a race that is over a specified amount. Whenever a patron wins a race that has odds of 300 to 1 or greater, and pays more than $600, the Internal Revenue Service ("IRS") must be notified by the racetrack. If the payoff is over $1000, twenty percent must be withheld from the patron's winnings. Some winners often prefer to have a third party, known as a ten-percenter, cash the ticket for them. In this manner, the patron attempts to avoid IRS detection of the winning efforts. For his part, the ten-percenter receives a tax break because he furnished his social security number and signed the winning ticket. The patron, then receives the money, minus the withholding tax, and the Government has no knowledge of who won the payoff.
 
 
 4
 Racetrack personnel then report the transaction to the IRS by preparing an IRS Form W-2G ("W-2G"). This form reflects essentially the same information as the winning ticket voucher. At the end of the year, the ten-percenter, when filing his tax returns, attaches copies of these fraudulently obtained W-2Gs and claims a refund of the withholding which he was not legally entitled to receive.
 
 
 5
 In the instant case, the indictment alleged that Stovack had ten-percenting arrangements with several race track cashiers. Further, the indictment alleged that the defendant had arrangements with other ten-percenters to share winning tickets which they had cashed. Finally, the indictment alleged that the defendant, as a result of filing fraudulent W-2G forms, obtained substantial tax refunds illegally. On appeal, Stovack alleges that there was insufficient evidence to support the jury's guilty verdict.
 
 II.
 
 6
 This court will reverse a conviction for insufficient evidence only if no rational trier of fact would have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In reviewing a jury's verdict for evidentiary sufficiency, all the evidence is to be considered in the light most favorable to the prosecution. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). In certain instances, circumstantial evidence alone is sufficient to sustain a conviction, and such evidence need not remove every reasonable hypothesis, except that of guilt, to support a conviction. Id. at 225.
 
 
 7
 Stovack contends that the Government failed to produce sufficient evidence to support the jury's verdict. First, he argues that the testimony of certain Government witnesses should have been disregarded because these witnesses were provided immunity in exchange for cooperation, or had a plea arrangement with the Government.
 
 
 8
 We find this argument unpersuasive. The record reveals sufficient evidence to show that defendant was not only engaged in the practice of signing winning ticket vouchers for races he did not win, but that he also attached W-2Gs to his tax returns and hence filed false tax refund claims. The testimony of two Government witnesses, Jesse Pierce and Alonzo McElrath, directly supported the jury's verdict. Although these witnesses had agreements with the Government to testify against Stovack, this fact is irrelevant to our inquiry on appeal. As this court has held in United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988), cert. denied, 109 S.Ct. 840 (1989), any argument relating to the credibility of government witnesses is irrelevant to a reviewing court's determination of the sufficiency of the evidence. Id. Furthermore, "attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." United States v. Adamo, 742 F.2d 927, 935 (6th Cir.1984). Because Stovack's claims relate to the quality of the Government's evidence rather than the sufficiency of that evidence, we find no basis for disturbing the jury's verdict on this ground.
 
 
 9
 In addition, there is other evidence in the record which supports the conclusion that the defendant was involved in filing false claims. IRS Special Agent Moore testified that he prepared a summary of Stovack's winning tickets for the relevant period. Moore testified that the race-track records corroborated the testimony of the cashiers that they cashed tickets for Stovack. In fact, many of these tickets appeared on the defendant's tax return for the relevant period. Moore also testified that the defendant claimed he won numerous gimmick races (e.g., trifecta, perfecta etc.) in the same day. Moore stated that the defendant claimed a total of 135 trifecta wins in 1980, 440 in 1981, 734 in 1982 and 380 in 1983. J.App. at 110-111. The Government acknowledges that while it could not directly establish which of the winning tickets and corresponding W-2Gs were ten-percented, "there is a reasonable inference that the defendant attached some fraudulent receipts to his returns." Appellee's Br. at 18. We find this inference is supported by the testimony of the cashiers, with whom the defendant had a ten-percenting agreement, as well as the statistical improbability that the defendant could win so many gimmick races where the odds are significantly greater than simply picking one horse.
 
 III.
 
 10
 Because we find sufficient evidence in the record to support the jury's verdict, we AFFIRM the judgment of the district court.
 
 
 
 *
 Honorable Eugene E. Siler, Jr., United States District Court for the Eastern District of Kentucky and U.S. District Judge for the Western District of Kentucky, sitting by designation