968 F.2d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald HETHCOX and Joanne Hethcox, Plaintiffs-Appellants,
v.
Robert CONGER, Mayor; Edwin Alderson, Chief of Police;
J.W. Matlock, Kenneth Sutherland, Susan Pankey Taylor, Danny
R. Utley, Richard Roe, Officers of the Jackson Police
Department; City of Jackson, Tennessee, Defendants-Appellees.
 No. 90-6601.
 United States Court of Appeals, Sixth Circuit.
 June 29, 1992.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs, Donald and Joanne Hethcox, appeal the district court's judgment entered on a jury verdict dismissing their federal constitutional and statutory civil rights claims against officers of the Police Department of the City of Jackson, Tennessee. Plaintiffs contest the evidentiary support for the jury's verdict and allege error in the district court's refusal to admit evidence. For the reasons that follow, we affirm.
 
 I.
 
 2
 Plaintiffs were arrested by officers of the Jackson Police Department in the early hours of October 27, 1982. The arrests resulted in the conviction of both plaintiffs on state charges of assault and battery upon the arresting officers. The convictions were affirmed by the Tennessee Court of Criminal Appeals.
 
 
 3
 In their amended complaint filed on December 21, 1987,[1] plaintiffs contended that the arrest of Donald Hethcox was carried out in such a violent fashion as to violate their rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as protected by 42 U.S.C. §§ 1981, 1982, and 1983. Donald Hethcox alleged that he suffered serious head and back injuries during his arrest. Plaintiffs also invoked the district court's pendent jurisdiction to determine their state tort claims of assault and battery, false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, negligence, and gross negligence.
 
 
 4
 On March 29, 1988, the district court entered an order granting summary judgment to officer J.W. Matlock. The motion to dismiss all pendent state tort claims filed by the remaining defendants was granted on October 20, 1989. On March 19, 1990, the district court entered an order granting plaintiffs' motion for voluntary dismissal of defendants Robert Conger, Edwin Alderson, Richard Roe, and the City of Jackson. When plaintiffs' jury trial commenced on November 13, 1990, the remaining defendants were officers Danny Utley, Susan Pankey Taylor,[2] and Kenneth Sutherland; and the sole issue was whether the conduct of the arresting officers constituted an unreasonable seizure under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. The jury returned a verdict for the defendants.
 
 
 5
 Plaintiffs testified that they were working in Jackson on a temporary basis and were staying at the Downtowner Motor Inn in that city. On the evening of October 26, plaintiffs and another couple, having finished work for the day, stepped out together for an evening of dancing. Donald Hethcox had a few beers and some food. Donald, who was taking Soma, Librium, Tylenol 3 (codeine), and an antibiotic to combat a virus, was made ill by the combination of food and beer. Therefore, Donald excused himself and returned to the hotel. Joanne Hethcox and the other couple did not return to the hotel until some hours later, at approximately one o'clock in the morning.
 
 
 6
 When Joanne arrived at the hotel, she was wary about going up to the room she shared with Donald, as Donald had apparently become angry with her for not returning to the hotel with him. The couple with whom Joanne had been went up to plaintiffs' room to ascertain Donald's mood. Both reported that Donald was "madder than hell." Joanne decided to have the hotel's desk clerk call the police so that an officer could escort her to the room. Once there, Joanne intended to take some clothing and other necessities, and then secure her own room for the night.
 
 
 7
 When Pankey and Sutherland arrived at the hotel, they met with Joanne. Sutherland noticed that Joanne had a black eye which, she explained, she had incurred a few days before in an accident. The officers accompanied Joanne to the room, and Donald allowed all to enter. Donald then sat down on the bed. At this point the stories of the two sides diverge.
 
 
 8
 Plaintiffs testified to what amounts to an unprovoked assault upon Donald by the officers. Donald was allegedly hit on the back of his head with a nightstick and fell face forward on the bed. It was also alleged that Donald received numerous blows to the back while he was lying down, and that one of the officers placed a knee in the center of Donald's back, causing a large bruise. At some point Utley arrived and allegedly struck Donald. Eventually, Donald's wrists and ankles were cuffed (the latter using a flex-cuff) and Donald was dragged by his hair down the hotel corridor to an elevator. Arriving at the ground floor, Donald was dragged to a patrol car and thrown inside. At this point, Joanne inquired about bail for Donald, and was informed that she was under arrest as well.
 
 
 9
 Joanne also stated that while at the police station being booked, she heard what she believed sounded like blows being delivered to Donald. Finally, plaintiffs contended that Donald had been dressed only in his underpants at the time of his arrest, and that he was forced to appear in open court for his formal arraignment the next day looking terribly dishevelled and wearing nothing more than his underpants.
 
 
 10
 In contrast, Sutherland testified that he and Pankey responded to a call regarding a possible domestic disturbance at the hotel. Arriving there, the officers met Joanne, who told them that she was afraid to go to her room as she and Donald had an altercation earlier in the evening. The officers accompanied Joanne to the room. Donald allowed them inside and then reclined on the bed. The officers noticed liquor and pill bottles in the room. The officers told Donald that they were there so that Joanne could gather her belongings peacefully. Joanne and Donald yelled at each other, and Donald directed some profanity at Joanne and the officers.
 
 
 11
 When Joanne reached the vanity near the center of the room, Donald left the bed and, while the two argued, shoved Joanne towards the officers. Having witnessed a battery, the officers decided to arrest Donald. Sutherland informed Donald that he was under arrest and advanced toward him, holding Pankey's nightstick. Sutherland took Donald's arm and cuffed his right wrist. Donald then managed to twist away from Sutherland. Sutherland responded with his nightstick, "hit[ting] him in the back of the collarbone approximately an inch or two from the neck," causing Donald to fall on the bed, where the two fought over possession of the nightstick.
 
 
 12
 Pankey was kicked several times by Donald while attempting to help Sutherland cuff him. Pankey suffered groin injuries when Joanne jumped on her back. At some point Pankey managed to call for backup. Sutherland had been taken out of the fight when Donald managed to kick him in the groin. Sergeant Taylor arrived and removed Joanne from Pankey's back. Officer Utley and his partner also arrived, and managed to cuff Donald while holding him face down on the bed. Sutherland, Pankey, and Utley each stated that Donald was never struck on the head with a nightstick, and that the fight primarily involved the participants' fists. After cuffing Donald, the officers were obliged to carry him downstairs to the patrol car, and the necessary turning and lifting, together with Donald's squirming, resulted in scratches and bruises to Donald. Pankey was present at Donald's booking and testified that he was not beaten or abused in any way. None of the officers believed that they had any option but to subdue Donald physically once he had twisted out of Sutherland's grasp. As Pankey put it, Donald "was not a man that you could talk to or have a conversation with."
 
 
 13
 Plaintiffs present two issues on appeal.
 
 II.
 
 14
 Plaintiffs raise the question of admissibility of evidence of prior acts under Rule 404(b) of the Federal Rules of Evidence, but have failed to identify the particular evidence claimed to have been improperly excluded. The record reveals an evidentiary dispute which arose during cross examination of Pankey. We will address the district court's ruling.
 
 
 15
 Plaintiffs counsel elicited from Pankey that she had, prior to the incident involving plaintiffs, been married to and divorced from Sergeant Taylor. Counsel sought to probe the causes of the divorce, to which defense counsel objected. The district court questioned counsel at a bench conference.
 
 
 16
 THE COURT: Mr. Bradberry, what's the answer going to be? Or what do you think the answer is going to be?
 
 
 17
 MR. BRADBERRY: The answer should be, Your Honor, that she pulled her service revolver on him on two occasions. This is a propensity for violence that we feel is relevant to the demeanor that she had on this occasion.
 
 
 18
 THE COURT: Well, that may be grounds for a divorce, but it's not relevant in this action. I'll sustain that objection.
 
 
 19
 MR. BRADBERRY: Are you saying that's not prior bad acts?
 
 
 20
 THE COURT: I'm saying that objection is sustained. And prior bad acts are not admissible, Mr. Bradberry. The rule specifically says that prior bad acts are not admissible. So the objection is sustained.
 
 
 21
 Evidentiary rulings of a district court will not be reversed absent a clear showing of abuse of discretion. United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988), (per curiam), cert. denied, 488 U.S. 1031 (1989). This court will only find an abuse of discretion when firmly convinced that a mistake has been made. Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 157 (6th Cir.1988).
 
 
 22
 To determine the admissibility of evidence under Rule 404(b), a district court must undertake a two-step analysis. First, a court must determine the relevance of the proffered evidence and whether that evidence was admissible for a proper purpose. United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991). Evidence is relevant if it relates to a matter that is in issue and deals with substantially similar conduct to that for which the defendant is being tried. United States v. Blankenship, 775 F.2d 735, 739 (6th Cir.1985). To be admissible for a proper purpose, a district court must determine "whether that evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686 (1988). Second, given that the first step of the test is satisfied, a district court must then balance the probative value of the proffered evidence against its potential prejudicial effect. Fed.R.Evid. 403; Huddleston, 485 U.S. at 687.
 
 
 23
 It is clear to us that the district court ruled that plaintiffs' inquiry into the causes of Pankey's divorce were irrelevant. Pankey's use of force towards plaintiffs or towards arrestees in general was a matter in issue at trial. Pankey's conduct towards her former husband at the time of their divorce is wholly unrelated to that issue, and that conduct is not substantially, or even remotely, similar to the conduct attributed to Pankey by plaintiffs during the incident in this case. The district court's refusal to permit inquiry into irrelevant material was entirely appropriate, and we find no abuse of discretion.
 
 
 24
 Plaintiffs next argue that the jury's verdict for defendants was not supported by the evidence adduced at trial. Although we note that there is substantial evidence to support the verdict, we do not reach the merits of this argument, as the record shows that plaintiffs failed to request either a new trial or judgment notwithstanding the verdict. This failure precludes appellate review of the issue. Dixon v. Montgomery Ward, 783 F.2d 55 (6th Cir.1986), (citing Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216 (1947)).
 
 
 25
 AFFIRMED.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Plaintiffs' first complaint was voluntarily dismissed on December 19, 1986, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure
 
 
 [2]
 Two officers with the surname Taylor were involved in plaintiffs' arrests. Officer Susan Pankey Taylor was referred to at trial as Officer Pankey. We will refer to her as "Pankey."