110 F.3d 65
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rogerick VAN ZANT and Stanley Price, Defendants-Appellants.
 No. 95-1977, 95-2118.
 United States Court of Appeals, Sixth Circuit.
 April 8, 1997.
 
 Before: KENNEDY, CONTIE, and NORRIS, Circuit Judges;
 PER CURIAM.
 
 
 1
 Defendants Rogerick Van Zant and Stanley Price were convicted of conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1). Each defendant was also convicted on separate counts of distribution of cocaine, aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In addition, Price was convicted on two counts of unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b). Defendants raise the following claims on appeal: (1) the evidence was insufficient to support their conspiracy convictions; (2) a prejudicial variance existed between the indictment and the evidence at trial; (3) the District Court committed error in its instructions to the jury; and (4) a witness's comment on defendants' silence at the time of arrest violated defendants' Fifth Amendment rights. In addition, Price claims that (1) the evidence was insufficient to support his conviction for aiding and abetting the distribution of cocaine; (2) the District Court erred in determining his base offense level for sentencing purposes; and (3) the District Court erred in sentencing him under the crack cocaine guideline instead of the cocaine hydrochloride guideline.
 
 I. Facts
 
 2
 At approximately 2:30 p.m. on February 24, 1993, undercover FBI Special Agent Johnson went to the home of Rance Embry, 18696 Washburn in Detroit, to purchase one-eighth of a kilogram of cocaine. Upon Agent Johnson's arrival, Embry telephoned his source of supply, Paul Jordan, who arrived shortly. Jordan did not have the cocaine, and he used Embry's telephone to call his source of supply for the cocaine.[1] Jordan soon left Embry's house and then returned with one eighth of a kilogram (123.7 net grams) of a cocaine base and cocaine mixture. Agent Johnson paid Jordan $3,450 in return for the cocaine.
 
 
 3
 As Agent Johnson was leaving Embry's house, he saw a black male sitting in the driver's seat of a blue Corsica automobile parked in the street in front of Embry's house. Agent Johnson was unable to identify the driver. Another FBI agent who was conducting surveillance noted the license plate and discovered that the Corsica had been rented that same day to Van Zant's mother. Rogerick Van Zant was an authorized driver on the rental agreement.
 
 
 4
 On April 3, 1993, Agent Johnson returned to Embry's house to purchase cocaine. Because Embry did not have the cocaine, he and Agent Johnson drove in the agent's undercover car to Paul Jordan's house at 18501 Ilene Street. While Agent Johnson and Embry were waiting for Jordan to come out of his house, defendant Price arrived in a Mercury Sable automobile and pulled into Jordan's driveway. Price entered Jordan's house, gave Jordan an eighth of a kilogram of crack cocaine, and then returned to his car.[2] Jordan soon left his house and got into the undercover car with Agent Johnson and Embry. Jordan gave Agent Johnson nearly an eighth of a kilogram (99.5 net grams) of cocaine base in return for $5,400 in cash. Jordan exited Agent Johnson's car and entered the Mercury Sable, still occupied by Price, in Jordan's driveway.
 
 
 5
 Jordan was arrested in June 1993 and subsequently pleaded guilty on distribution of cocaine charges. Pursuant to his plea agreement, Jordan agreed to testify at defendants' trial.
 
 
 6
 In June 1994, defendants Van Zant and Price were charged in a second superceding indictment, along with several other individuals, with conspiring with Jordan to possess with intent to distribute and to distribute cocaine. Defendants were also charged in separate counts with aiding and abetting the distribution of cocaine. In addition, Price was charged with unlawful use of a communication facility to facilitate the commission of a drug offense.
 
 
 7
 At defendants' trial, Jordan testified that he was a mid-level cocaine dealer and that on several occasions since early 1988 defendant Van Zant had supplied him with cocaine. Van Zant would "front" Jordan the cocaine: he would give Jordan the cocaine on consignment, and Jordan would pay Van Zant after selling the cocaine to his customers. Rance Embry found customers to purchase the cocaine from Jordan. Jordan testified that Van Zant had supplied him with the eighth of a kilogram that Jordan sold Agent Johnson on February 24, 1993. Jordan said that Van Zant had driven a blue rental car that day.
 
 
 8
 Jordan also testified that his source for the crack cocaine that he sold undercover Agent Johnson on April 3, 1993 was defendant Stanley Price. Jordan stated that Price had been driving a Mercury Sable that day. Jordan testified that from 1989 to 1991, he had received at least twenty kilograms of cocaine from Price (JA at 335). Price "fronted" Jordan cocaine (JA at 342).
 
 
 9
 The jury returned a verdict against Van Zant and Price on all counts charged. Each defendant was sentenced to 188 months in prison. This appeal followed.
 
 II. Discussion
 A. Sufficiency of the Evidence
 
 10
 Defendants Van Zant and Price claim that the evidence at trial was legally insufficient to sustain their convictions for conspiracy to possess with intent to distribute and to distribute cocaine. Our task is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "The government must be given the benefit of all inferences which can reasonably be drawn from the evidence ... even if the evidence is circumstantial." United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984).
 
 
 11
 To establish a conviction for drug conspiracy under 21 U.S.C. § 846, the government must prove "that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." United States v. Barrett, 933 F.2d 355, 359 (6th Cir.1991) (quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986)). "Proof of a formal agreement is unnecessary; a tacit or mutual understanding among the parties is sufficient to show a conspiracy." United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991). The trier of fact may "infer knowledge of and participation in the common purpose and plan of a conspiracy based on defendant's actions and reactions to the circumstances." Barrett, 933 F.2d at 359.
 
 
 12
 The evidence at trial was sufficient to sustain defendants' convictions for participating in a drug conspiracy with Paul Jordan and others. Jordan testified that he obtained the cocaine he sold to Agent Johnson on February 24, 1993 from Van Zant. He testified that Van Zant had supplied him with cocaine on numerous occasions from 1988 to 1993. Van Zant would "front" Jordan the cocaine. Van Zant gave Jordan quantities up to half a kilogram of cocaine per transaction.
 
 
 13
 Jordan testified that defendant Price had supplied him with the cocaine he sold to Agent Johnson on April 3, 1993. According to Jordan's testimony, Price had supplied Jordan with at least twenty kilograms of cocaine from 1989 to 1991. Price "fronted" Jordan the cocaine. On one occasion, when Jordan complained to Price about the quality of the cocaine, Price told Jordan to "go on and move it."
 
 
 14
 Defendants claim that the evidence against them proved only a cocaine "buyer-seller" relationship and was, therefore, insufficient to sustain their convictions for conspiracy. Defendants contend that the evidence established merely that they sold drugs to Jordan, not they joined a larger conspiracy with Jordan to distribute drugs. While this Court has noted that a buyer-seller relationship alone is insufficient to support a conspiracy conviction, United States v. Anderson, 89 F.3d 1306, 1310-11 (6th Cir.1996), we have repeatedly upheld conspiracy convictions "where there is additional evidence beyond the mere purchase or sale, from which knowledge of the conspiracy may be inferred." Id. at 1311 (quoting United States v. Grunsfeld, 558 F.2d 1231, 1235 (6th Cir.1977)).
 
 
 15
 The evidence in the case sub judice was sufficient to establish that defendants joined a conspiracy with Jordan to distribute cocaine. First, the evidence established that defendants supplied Jordan with large amounts of cocaine. Van Zant supplied Jordan with cocaine on numerous occasions and in quantities up to one-half kilogram per transaction. Price supplied Jordan with at least twenty kilograms of cocaine from 1989 to 1991. "[A] large volume of narcotics creates an inference of a conspiracy." Id. (quoting United States v. Bourjaily, 781 F.2d 539, 545 (6th Cir.1986), aff'd, 483 U.S. 171 (1987)).
 
 
 16
 Second, Van Zant and Price "fronted" Jordan cocaine, supplying the drugs on consignment to further the goals of the conspiracy. Their relationship with Jordan, therefore, did not end upon delivering the cocaine to Jordan. Van Zant and Price had a financial interest in Jordan's success in selling the cocaine to other dealers. Each was present, moreover, when Jordan sold the cocaine to Agent Johnson. Price also told Jordan to "go on and move" the cocaine he was supplying him. A jury could reasonably infer that Van Zant and Price conspired with Jordan to distribute cocaine.
 
 
 17
 Defendant Price also claims that the evidence at trial was insufficient to sustain his conviction for aiding and abetting the distribution of cocaine. This claim is without merit. The basis for this conviction, as charged in the indictment, was Price's role in the April 3, 1993 sale of cocaine to Agent Johnson. As indicated above, the evidence was more than adequate to support a finding that Price supplied Jordan with the cocaine that Jordan then sold to Agent Johnson.
 
 
 18
 B. Variance Between the Indictment and the Evidence
 
 
 19
 Defendants next contend that their convictions should be reversed because the indictment charged a single conspiracy but the evidence at trial showed multiple conspiracies. "If an indictment alleges one conspiracy, but the evidence can reasonably be construed only as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby." United States v. Warner, 690 F.2d 545, 548 (6th Cir.1982). "Whether a single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury under proper instructions and to be considered on appeal in the light most favorable to the government." United States v. Moss, 9 F.3d 543, 551 (6th Cir.1993) (quoting Grunsfeld, 558 F.2d at 1238.
 
 
 20
 Count one of the second superceding indictment charged defendants with conspiracy to possess with intent to distribute and to distribute cocaine between 1988 and July 1993. The charge identifies as part of the conspiracy Van Zant, Price, Jordan, other named defendants, and "other persons both known and unknown to the Grand Jury." Defendants assert two grounds for their claim of prejudicial variance. First, they contend that Jordan withdrew from the cocaine distribution conspiracy for a period of time from 1991 to 1992, thereby creating one conspiracy from 1988 to 1991 and another, separate conspiracy from 1992 to 1993. This argument is unpersuasive. Although Jordan testified that he stopped selling cocaine in October 1991 and did not resume until mid-1992, he continued to collect debts owed to him from his cocaine sales. When Jordan resumed selling cocaine, he turned again to Van Zant and Price for his supply of cocaine. "[W]here a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." United States v. Rios, 842 F.2d 868, 873 (6th Cir.1988) (quoting United States v. Hamilton, 689 F.2d 1262, 1268 (6th Cir.1982)). The record in the instant case does not establish that Jordan withdrew from the conspiracy. Jordan's brief hiatus from cocaine dealing, therefore, did not create multiple conspiracies.[3]
 
 
 21
 Defendants also claim that the evidence failed to establish that they both were involved in the same conspiracy with Jordan. Van Zant and Price did not know each other. Indeed, there is no evidence that either defendant knew that Jordan used any other cocaine suppliers. As far as each defendant was aware, Jordan and his distributors could be selling only the drugs with which that defendant supplied him. Neither defendant, therefore, had a direct interest in Jordan's relationship with the other defendant.
 
 
 22
 Viewing the evidence in the light most favorable to the government, we conclude that the government's proof at trial supported a finding of a single conspiracy to distribute cocaine. We have stated:
 
 
 23
 The fact that a conspiracy can be divided into distinctive sub-groups does not mean that there is more than one conspiracy. As long as the different sub-groups are committing acts in furtherance of one overall plan, the jury can still find a single, continuing conspiracy.
 
 
 24
 United States v. Rugiero, 20 F.3d 1387, 1392 (6th Cir.1994) (quoting Warner, 690 F.2d at 550 n. 8). "The key is to determine whether the different sub-groups are acting in furtherance of one overarching plan." United States v. Ghazaleh, 58 F.3d 240, 244 (6th Cir.1995). The overarching plan here was the distribution of cocaine through Jordan to other dealers. The mere fact that Jordan obtained the drugs from more than one supplier does not preclude a finding that the suppliers were involved in a single conspiracy with Jordan to distribute cocaine. See id. at 244 ("The fact that Defendant had two different sources of the drugs, one in Chicago and one in Tampa, does not alter the fact that only one conspiracy existed."). "The defendant must know the purpose of the conspiracy, but not necessarily the full scope thereof, the detailed plans, operation, membership, or even the purpose of the other members of the conspiracy." Warner, 690 F.2d at 550 (quoting United States v. Shermetaro, 625 F.2d 104, 108-09 (6th Cir.1980).
 
 C. Jury Instructions
 
 25
 In a related claim, defendants contend that the District Court erred in refusing to give a requested jury instruction on multiple conspiracies. "The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984).
 
 
 26
 During conference with the District Court, defendants requested that the court give an instruction on multiple conspiracies. The court denied the request. Following one day and a half of jury deliberations, the jury informed the court that it was deadlocked. At this point, the court offered to give an instruction on multiple conspiracies, but defense counsel declined the offer. Because defendants had already made their closing arguments to the jury, we will not treat defendants' subsequent withdrawal of their request for the multiple conspiracy instruction as waiving the issue on appeal.[4]
 
 
 27
 The District Court should give a multiple conspiracy instruction "when the evidence is such that the jury could within reason find more than one conspiracy." Warner, 690 F.2d at 551. In the instant case, the evidence perhaps was sufficient to warrant a multiple conspiracy instruction, but we find that any error in failing to give the instruction was harmless. The court instructed the jury to decide whether the government had proved that defendants were "guilty of the conspiracy charged" in the indictment. The court carefully instructed the jury on the elements required to convict on the conspiracy count. In United States v. Davenport, 808 F.2d 1212 (6th Cir.1987), we held that the failure to give a multiple conspiracy instruction was harmless error because "[e]ach defendant was sufficiently connected to the illegal scheme charged and the principle figures, Ford, Sr. and Jr., to sustain the verdict." Id. at 1218. As in Davenport, we find that the failure to give the requested jury instruction did not prejudice defendants.
 
 
 28
 Defendants also claim that the District Court erred in refusing to instruct the jury that it was a question of fact for the jury to decide whether Jordan withdrew from the conspiracy in 1991. Jordan testified that he stopped selling cocaine in October 1991 but resumed in mid-1992. Defendants argue that this testimony was sufficient to find that Jordan withdrew from the original cocaine distribution conspiracy and started a new drug distribution conspiracy in mid-1992.
 
 
 29
 In order to establish withdrawal from a conspiracy, a conspirator must take "affirmative action to defeat or disavow the purpose of the conspiracy." United States v. Lash, 937 F.2d 1077, 1083 (6th Cir.1991). Jordan never informed Van Zant or Price that he had stopped selling cocaine. Jordan admitted, moreover, that he continued to collect his cocaine debts during this period. Thus Jordan did not affirmatively withdraw from the conspiracy. Jordan turned to defendants as sources for cocaine when he resumed selling in mid-1992. During Jordan's brief hiatus, Van Zant and Price remained available as his source of supply for when he decided to resume selling cocaine. "[W]here a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." Rios, 842 F.2d at 873 (quoting Hamilton, 689 F.2d at 1268). The failure to give an instruction on Jordan's withdrawal from the conspiracy was not error.
 
 
 30
 Defendants also claim that it was error for the District Court to refuse to instruct the jury that a buyer-seller relationship alone is insufficient to establish a conspiracy to distribute drugs. This claim is without merit. The District Court's instruction to the jury fairly and adequately informed the jury as to the proof required to support the conspiracy charge. We find no error.
 
 
 31
 D. Witness's Comment on Defendants Silence at Time of Arrest
 
 
 32
 Defendants claim that an FBI agent's comment on defendants' silence at the time of their arrest created reversible error. The following exchange occurred during the cross-examination of FBI Agent Grills:
 
 
 33
 Q: You found out Mr. Van Zant didn't actually know anybody other than Paul Jordan, wouldn't you say that's correct?
 
 
 34
 A: I don't know that those subjects were approached with all the individuals because that would pertain to the case. As you know, Mr. Van Zant and Mr. Price are both represented and indicated that they didn't want to make any statements, so I could not question them regarding particulars.
 
 
 35
 (JA at 236) Neither defendant objected to this testimony, so we review for plain error. See FED.R.EVID. 103(d). Reversal under plain error review is appropriate only when failure to reverse would result in a "manifest miscarriage of justice." Finch v. Monumental Life Ins. Co., 820 F.2d 1426, 1432 (6th Cir.1987).
 
 
 36
 Aside from Agent Grills' brief comment, no other reference was ever made to defendants' post-arrest silence. The question posed of Agent Grills was posed by defense counsel, not the government. The government did not refer to defendants' post-arrest silence on re-direct of Agent Grills or during final argument. Defendants did not seek a curative instruction or admonition. The isolated comment on defendants' post-arrest silence did not violate defendants' Fifth Amendment rights. See United States v. Whitley, 734 F.2d 1129, 1136-37 (6th Cir.1984).
 
 E. Price's Sentence
 
 37
 Price also challenges his sentence of 188 months. Price claims that the District Court erroneously found that he was accountable for 15-50 kilograms of cocaine, creating a base offense level of 34 under the Sentencing Guidelines. Price also claims that it was error for the court to impose a two-level enhancement for possession of a handgun.
 
 
 38
 The government has the burden of proving by a preponderance of the evidence the quantity of drugs for which a defendant is accountable. See United States v. Sims, 975 F.2d 1225, 1242 (6th Cir.1992). We review for clear error the District Court's factual findings as to the quantity of drugs for which a defendant should be held responsible. Id.
 
 
 39
 The District Court accepted the recommendation of the Probation Department that Price be held accountable for 15-50 kilograms of cocaine. We agree with the District Court that this finding is supported by a preponderance of the evidence. Trial testimony established that Price supplied Jordan with one eighth of a kilogram of cocaine base on April 3, 1993 for sale to FBI Agent Johnson. Jordan testified that during the course of the conspiracy, he received at least twenty kilograms of cocaine from Price. The evidence was sufficient to conclude that Price was "more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible." United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.1990).
 
 
 40
 Defendant also claims that it was error for the District Court to impose a two point upward adjustment for possession of a firearm under U.S.S.G. § 2D1.1(b)(1). To warrant such an enhancement, the government has the burden of proving "(1) that the defendant 'possessed' the weapon, and (2) that such possession was during the commission of the offense." United States v. Sanchez, 928 F.2d 1450, 1460 (6th Cir.1991). Jordan testified at trial that he had seen Price in possession of a handgun once or twice during their cocaine dealings (JA at 347, 365). "Possession of a firearm during the commission of a drug offense creates a presumption that the possession is connected with the drug offense." United States v. Chalkias, 971 F.2d 1206, 1216 (6th Cir.1992). Jordan's testimony was sufficient to support the two-level enhancement in Price's base offense level.
 
 
 41
 Finally, Price claims that the District Court erred in sentencing him under the "cocaine base," or "crack," guideline, rather than the regular cocaine hydrochloride guideline. Price's claim of error is without merit. The court found that Price was liable for at least twenty kilograms of cocaine. It did not sentence him under the "crack" cocaine guideline.
 
 III. Conclusion
 
 42
 For the foregoing reasons, we AFFIRM the convictions of Van Zant and Price. We also AFFIRM Price's sentence.
 
 
 
 [1]
 Telephone records show that on the afternoon of February 24, 1993, two calls were placed from Embry's telephone to Van Zant's pager and two calls were placed to Van Zant's cellular telephone
 
 
 [2]
 Jordan testified that after Price arrived at Jordan's house, Jordan entered Price's car, at which time Price gave him the cocaine (JA at 330). Agent Johnson testified, however, that after Price arrived at Jordan's home, Price entered the house and returned alone to his car shortly thereafter (JA at 290)
 
 
 [3]
 Even if Jordan's hiatus from selling cocaine did create multiple conspiracies, it is difficult to see how the resulting variance was prejudicial to defendants, given that each defendant was implicated in both the pre-1991 and post-1992 conspiracies. Any variance created by Jordan's putative withdrawal from the conspiracy was harmless
 
 
 [4]
 We note, though, that Van Zant did briefly argue the issue of multiple conspiracies in his closing statement. Price did not argue the issue