**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert MOSS (92–1132); Ronald Kohn (92–1136); Joann Climpson (92–1144); and Randy Richardson (92–1155), Defendants–Appellants.**

**Nos. 92–1132, 92–1136, 92–1144 and 92–1155.**

United States Court of Appeals, Sixth Circuit.

Argued April 26, 1993.

Decided Nov. 18, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 28, 1994.

Kathleen Moro Nesi, Asst. U.S. Atty. (argued and briefed), Detroit, MI, for U.S. in Nos. 92–1132, 92–1136 and 92–1155.

Christopher A. Andreoff (argued and briefed), Detroit, MI, for Robert Moss.

Neil H. Fink (argued and briefed), Neil H. Fink, David A. Koelzer, David A. Koelzer, Law Offices of Neil H. Fink, Birmingham, MI, for Ronald Kohn.

Kathleen Moro Nesi, Asst. U.S. Atty. (argued and briefed), Stephen L. Hiyama, Asst. U.S. Atty., Detroit, MI, for U.S. in No. 92–1144.

Kenneth R. Sasse (argued and briefed), Detroit, MI, for Joann Climpson.

L.C. John (argued and briefed), Detroit, MI, for Randy Richardson.

Before: JONES and BATCHELDER, Circuit Judges, and ENGEL, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendants Robert Moss (Moss) and Ronald Kohn (Kohn) appeal their convictions and sentences on one count each of conspiracy to import and conspiracy to distribute marijuana. Defendant Randy Richardson (Richardson) appeals his convictions and sentences for conspiracy to distribute marijuana and laundering drug money. Defendant Joann Climpson (Climpson) appeals her conviction and sentence for laundering drug money. Defendants contend on appeal: (1) that the district court failed to make a finding that a conspiracy was established by a preponderance of the evidence; (2) that testimony that Moss solicited a co-conspirator to bribe a witness was improperly admitted into evidence at trial; (3) that privileged information was improperly admitted into evidence; (4) that there was an impermissible variance between the indictment and the evidence presented at trial; (5) that improper hearsay testimony was admitted at trial; (6) that insufficient evidence supports defendant Climpson's conviction; (7) that defendants received ineffective assistance of counsel; and (8) that defendants were sentenced incorrectly under the Sentencing Guidelines. We affirm the judgments of conviction, but

remand for resentencing of defendants Richardson and Climpson.

## I.

In March 1989, a camper truck driven by Ed Brady was discovered crossing the United States–Mexico border with 329.25 pounds of marijuana hidden in the camper ceiling. Supervised by U.S. Customs agents, Brady drove the truck to its intended destination in Tucson, Arizona where three more people involved in the smuggling were arrested. Those arrested, Terry Collins, Tom Beranek and Eli Moreno, later pleaded guilty to drug charges in the United States District Court in Arizona. Collins and Beranek began cooperating with the government after they were sentenced. The ensuing investigation revealed a smuggling ring involved in the importation of marijuana from Mexico to South Dakota and Michigan. The indictment of the defendants resulted from the investigation of the marijuana smuggling operation.

On March 4, 1991, a federal grand jury in the Eastern District of Michigan issued an indictment charging Moss and Kohn with one count each of conspiracy to import marijuana in violation of 21 U.S.C. §§ 952 and 960 and conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846. A superseding indictment was issued on April 26, 1991, in which Richardson and Climpson were added to the conspiracy to distribute marijuana charge, and were also charged with laundering money in violation of 18 U.S.C. §§ 1956 and 2. Finally, a second superseding indictment was issued in which it was charged that Moss continued to act in furtherance of the conspiracy as late as March 22, 1991, by soliciting a co-conspirator to bribe a potential government witness.

A jury trial commenced in the district court on September 6, 1991. Thirteen days of testimony from forty-two witnesses ensued, during which details emerged of a marijuana smuggling operation spanning at least eight years and involving at least fourteen participants. Hence, the facts of the case are relatively involved.

The evidence adduced at trial was that Terry Collins and an associate named David Jaeger purchased quantities of marijuana for resale from a Mexican man named Albert Sanchez sometime in 1981. Later, Collins and Jaeger first met defendant Moss, who was an associate of Albert Sanchez, when Moss delivered a suitcase containing 30 pounds of marijuana to them in Rapid City, South Dakota. Moss negotiated the price of the marijuana with Collins and Jaeger. Thereafter, larger marijuana deliveries were arranged through Moss and were delivered to Rapid City in camper trucks. Ultimately, Moss asked Collins and Jaeger to begin driving loads of marijuana from Texas to Rapid City and Detroit, and they agreed.

Collins made numerous deliveries of marijuana of at least 60 to 90 pounds from Texas to Rapid City and Detroit during the following year or two. Jaeger made a single delivery of an unspecified amount of marijuana during this period. Collins and Jaeger testified that Moss directed their deliveries.

In late 1985, Collins was directed to meet Moss in Arizona. The smuggling operations were conducted from Arizona after that point due to increased security problems at the Texas–Mexico border. Thereafter, Moss directed over twenty deliveries of marijuana made by Collins, Jaeger, Boyd Kennedy, and Beranek in loads of about 300 pounds each over the next three and one-half years. Jaeger and Collins were also directed by Moss to deliver large sums of money to facilitate the smuggling operations. Deliveries of marijuana made to the Detroit area during this time were made to both Moss and Kohn.

After the winter of 1987–88, Jaeger was instructed that Kohn would begin overseeing the delivery operations and that Moss would undertake a lesser role in the smuggling ring. The following winter, Tom Beranek was enlisted to deliver marijuana. That winter, Beranek and Collins made three or four trips to Arizona and delivered loads of marijuana of about 300 pounds each. Most of the marijuana was delivered to Detroit at the direction of Kohn. Then, the camper driven by Brady was stopped at the Arizona–Texas border leading to the arrests of Collins, Beranek and Eli Moreno.

Next, Kohn asked his associate, defendant Richardson, to take 100 pounds of marijuana

because Kohn was nervous due to the arrests. Richardson's ex-girlfriend, Jacqueline Hines testified that she was present at Richardson's house when Kohn made this request. Richardson took the marijuana and stored it in a residence owned by an acquaintance.

Evidence was introduced that Richardson was a marijuana dealer in the Detroit area who generally sold quantities of marijuana of one pound or less, and whose main source of marijuana was Kohn. Hines testified that Richardson kept profits made from his marijuana sales in a green bag which contained as much as $10,000–$15,000. Hines sometimes counted the money in the green bag. Richardson occasionally told Hines that he had to meet Kohn to give Kohn money. He removed $5,000 from the bag before meeting Kohn on one such occasion.

Hines testified that Richardson smoked marijuana with defendant Climpson, who is also the grandmother of Richardson's son. Further, Hines accompanied Richardson in his car as he made deliveries of ¼ to 1 pound of marijuana to Climpson's house. Richardson told Hines that he sometimes left his green money bag at Climpson's house.

On June 23, 1989, Richardson bought a house. Climpson picked Richardson up and drove him to the closing. Hines testified that Richardson took his green money bag with him and that over $10,000 was contained in the bag at that time. That day, Climpson obtained a cashier's check in her name at a local bank which was used by Richardson at the closing. Climpson paid cash for the cashier's check in the amount of $9,400.02 using 32 $100 bills and other smaller bills. Hines testified that Richardson returned after the closing, and that the green bag was empty at that time. Hines testified that Richardson later told her that, if questioned about the source of the money used to purchase the house, he could say that he borrowed the money from Climpson.

Finally, evidence was introduced that David Jaeger and his attorney came to Detroit from South Dakota for Jaeger's arraignment in this case on March 21, 1991. After arraignment, Jaeger and his attorney were invited to Attorney Timothy Murphy's nearby office to discuss the case. Murphy represented Moss at that time and ultimately at trial. When Jaeger and his attorney arrived at Murphy's office, Moss and Kohn were present.

During the meeting, copies of several hundred pages of documents were provided by Murphy to Jaeger's attorney to assist Jaeger's defense. The possibility that Terry Collins, Boyd Kennedy and Tom Beranek were cooperating with the government was discussed during the meeting. At some point, Moss and Jaeger left the meeting together to take a walk outside. During this walk, Moss asked Jaeger to offer Kennedy $25,000 in gold coins to change his testimony or to refuse to testify. Ultimately, Jaeger pleaded guilty to conspiracy to distribute marijuana in this case and testified against the remaining defendants at trial.

The jury was instructed without pertinent objection. The jury returned verdicts of guilty on all counts except with respect to Climpson, who was found guilty of laundering money, but not guilty of conspiracy to distribute marijuana.

Moss was sentenced to two concurrent 292 month terms of imprisonment with a 5 year term of supervised release and was fined $25,000. Kohn was sentenced to two concurrent 188 month terms of imprisonment with a 5 year period of supervised release. Richardson was sentenced to two concurrent 121 month terms of imprisonment with a 5 year term of supervised release. Climpson was sentenced to a 63 month term of imprisonment with a 3 year period of supervised release.

## II.

### A. Conspiracy Finding

Moss, Kohn and Richardson contend that the district court erred in permitting into evidence co-conspirators' statements without making a finding that a conspiracy was established by a preponderance of the evidence. In order to render co-conspirator's statements made in furtherance of the conspiracy which are otherwise hearsay admissible pursuant to Fed.R.Evid.

801(d)(2)(E), the government must show by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant against whom the statement is offered was a member of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy. *See United States v. Rios,* 842 F.2d 868, 872 (6th Cir.1988) (per curiam), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989); *United States v. Vinson,* 606 F.2d 149, 152 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *United States v. Enright,* 579 F.2d 980, 986–87 (6th Cir.1978). The district court is required to make a finding that the government has met its burden, but may admit the statements in question subject to a later ruling that this burden was met. *Vinson,* 606 F.2d at 153. Here, the district court admitted co-conspirator statements subject to later ruling.

The government contends that the district judge made an adequate finding that the government met its burden of proof when, after the government pointed out that a finding had not yet been made, the court stated that he "didn't make that determination on the record but clearly there is no problem." At that point, defendants made no objection or request for further findings. Generally, a district court's determination that the government carried its burden of proof is reviewed for abuse of discretion. *United States v. Curro,* 847 F.2d 325, 328 (6th Cir.), *cert. denied,* 488 U.S. 843, 109 S.Ct. 116, 102 L.Ed.2d 90 (1988). However, the government argues that the determination in this case should be reviewed only for clear error because defendants made no contemporaneous objection to the district court's failure to make *Enright* findings at trial or to the adequacy of its findings after the government brought it to the district court's attention. However, we need not reach the question of which standard of review is most appropriate because we conclude that no reversible error was committed. *See Curro,* 847 F.2d at 328 n. 3.

The circumstances of this case differ from those involved in *United States v. Castro,* 908 F.2d 85 (6th Cir.1990). In *Castro,* this court concluded that a limited remand for *Enright*

findings was required where the parties neglected to request, and the district court did not make, any finding whatever. *Castro,* 908 F.2d at 91. Here, the district court made a finding, albeit conclusory.

The district court's determination in this case is more similar to the determination deemed adequate in *Curro,* 847 F.2d at 328–29. While the court cautioned that "a mere conclusory statement will not always suffice" as adequate *Enright* findings, it concluded that no specific findings were required where the conspiracy alleged involved many acts and people, and the court was "able to say with confidence that the government met its burden." *Id.* In the instant case, the government's burden of proof likewise was clearly met. Notably, defendants herein do not cite specific co-conspirator statements to which they now object. We reiterate that more specific *Enright* findings are preferred and that a conclusory statement will not suffice in every case. However, we conclude that the district court, in this case, committed no error by failing to make more specific findings under the circumstances of this case.

**B. Bribery Solicitation**

Moss, Kohn and Richardson argue that Moss' solicitation of Jaeger to bribe a witness was not made during the course of the conspiracy. Therefore, they contend that testimony concerning the solicitation was inadmissible hearsay, and that reference to the solicitation should have been stricken from the second superseding indictment as surplusage.

Generally, hearsay statements made after a conspiracy has ended are not admissible. *See Krulewitch v. United States,* 336 U.S. 440, 442–43, 69 S.Ct. 716, 718, 93 L.Ed. 790 (1949). Moreover, a conspiracy has ended when its objectives have been achieved or have been rendered impossible. *See Wong Sun v. United States,* 371 U.S. 471, 490, 83 S.Ct. 407, 418, 9 L.Ed.2d 441 (1963). However, a nonhearsay statement need not be made in furtherance of a conspiracy to be admissible. *Anderson v. United States,* 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974); *Lutwak v. United*

549

*States,* 344 U.S. 604, 618, 73 S.Ct. 481, 489, 97 L.Ed. 593 (1953).

Here, Jaeger's testimony that Moss solicited him to offer a bribe to cooperating witness is not hearsay. The testimony was not "offered in evidence to prove the truth of the matter asserted," and therefore does not fall within the definition of hearsay. *See* Fed. R.Evid. 801(c); *Martin v. Foltz,* 773 F.2d 711, 720 (6th Cir.1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986). Rather, the testimony was offered only to establish the fact that the solicitation was made. Accordingly, the testimony was properly admitted.

■ Defendants also contend that the reference to the bribe solicitation should have been stricken from the second superseding indictment pursuant to Fed.R.Crim.P. 7(d). This claim will be reviewed only for an abuse of discretion. *See United States v. Kemper,* 503 F.2d 327, 329 (6th Cir.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975). As noted, defendants contend that the solicitation was not undertaken in furtherance the underlying drug conspiracy. However, this court has noted that "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Thomas,* 875 F.2d 559, 562 n. 2 (6th Cir.) (citation omitted), *cert. denied,* 493 U.S. 867, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989). Here, the information in question was proven by the government at trial and was legally relevant. Thus, the district court did not abuse its discretion in refusing to delete the reference to solicitation from the second superseding indictment.

## C. Privileged Communications

■ Moss, Kohn and Richardson next contend that information concerning the meeting during which the bribery solicitation was made is privileged and therefore inadmissible at trial. Specifically, defendants object to testimony regarding the very fact that the meeting occurred, and that the participants discussed which individual co-conspirators might be cooperating with the govern-

ment. On appeal, defendants claim that this information is protected under the attorney-client privilege. However, Moss and Kohn objected to the testimony at trial not on grounds of privilege but only on hearsay grounds. In fact, counsel for Kohn specifically renounced any objection based upon privilege. Accordingly, the claimed error will be reviewed only for plain error. *See United States v. Causey,* 834 F.2d 1277, 1281 (6th Cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988).

■ Generally, the attorney-client privilege extends to "(c)onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 94 (3d Cir.1992) (quoting *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976)). A joint defense extension of the attorney-client privilege has been applied to confidential communications shared between co-defendants which are "part of an on-going and joint effort to set up a common defense strategy." *Haines,* 975 F.2d at 94 (quoting *Eisenberg v. Gagnon,* 766 F.2d 770, 787 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985)). The burden to establish the applicability of the privilege is upon the defendants. *Haines,* 975 F.2d at 94.

Here, no plain error occurred. As noted, counsel for Kohn specifically stated that he did not object to the testimony in question based upon privilege. Moreover, defendants did not establish "an on-going and joint effort to set up a common defense strategy." Under the circumstances of this case, defendants' claim on appeal is unavailing.

## D. Improper Variance

■ Next, Richardson argues that an improper variance exists between the conspiracy to distribute charge contained in the indictment and the government's proof at trial. Specifically, Richardson contends that multiple conspiracies were proven at trial rather than a single overall conspiracy to distribute marijuana. Also, Richardson asserts the related claim that the jury should have been

instructed by the district court with respect to multiple conspiracies.

First, Richardson did not request a multiple conspiracy instruction at trial. Therefore, this claim will be reviewed only for clear error. *See United States v. Pearce*, 912 F.2d 159, 163 (6th Cir.1990), *cert. denied*, 498 U.S. 1093, 111 S.Ct. 978, 112 L.Ed.2d 1063 (1991). As noted, this claim supplants Richardson's contention that multiple conspiracies were proven at trial. However, the district court committed no clear error in instructing the jury under the facts of this case.

Variance occurs "(i)f only one conspiracy is alleged in the indictment and the evidence adduced at trial can reasonably be construed to support a finding of multiple conspiracies." *United States v. Paulino*, 935 F.2d 739, 748 (6th Cir.) (citations omitted), *cert. denied*, — U.S. ——, 112 S.Ct. 315, 116 L.Ed.2d 257 *and cert. denied*, — U.S. ——, 112 S.Ct. 323, 116 L.Ed.2d 264 *and cert. denied*, — U.S. ——, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991), *and cert. denied*, — U.S. ——, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992). However, reversal is required only where the substantial rights of a defendant have been affected. *United States v. Bakke*, 942 F.2d 977, 985 (6th Cir.1991) (citing *United States v. Grunsfeld*, 558 F.2d 1231, 1238 (6th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977), *and cert. denied*, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978)). Moreover, "a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy." *Bakke*, 942 F.2d at 985 (quoting *Rios*, 842 F.2d at 872). "Whether a single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury under proper instructions and to be considered on appeal in the light most favorable to the government." *Grunsfeld*, 558 F.2d at 1238.

Here, Richardson's participation in the overall conspiracy to distribute marijuana was indeed relatively minor. However, Richardson agreed to accept delivery of 100 pounds of marijuana after Kohn told him that he was concerned because others involved in the conspiracy had been arrested. Essentially, Richardson undertook an act in furtherance of the overall conspiracy to distribute marijuana by this act. Viewing the evidence in the light most favorable to the government, it is concluded that no clear error was committed in instructing the jury. Furthermore, no variance between the indictment and the evidence adduced at trial occurred.

### E. Hearsay Testimony

Climpson contends on appeal that inadmissible hearsay testimony was admitted into evidence against her at trial. Specifically, Climpson objects to Hines' testimony that Richardson told Hines that "he could just say he borrowed [the $9,400.02] from [Climpson]." However, Climpson raised no contemporaneous objection to this testimony at trial. Moreover, this testimony is not hearsay because it was not "offered in evidence to prove the truth of the matter asserted." *See* Fed. R.Evid. 801(c); *Martin*, 773 F.2d at 720. Therefore, this claim is without merit.

### F. Sufficiency of the Evidence

Next, Climpson claims that her money laundering conviction is not supported by constitutionally adequate evidence. This claim will be reviewed only for a manifest miscarriage of justice because Climpson did not renew her motion for a judgment of acquittal at the close of evidence. *See United States v. Faymore*, 736 F.2d 328, 334 (6th Cir.), *cert. denied*, 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984). Moreover, the evidence must be viewed in the light most favorable to the government. *Id.*

The elements of the money laundering offense with which Climpson was charged are: (1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conduct or attempt to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership, or control of the proceeds. *See* 18 U.S.C. § 1956(a)(1)(B)(i). Recently, this court ad-

dressed the quantum of proof necessary to support a money laundering conviction under 18 U.S.C. § 1956 in *United States v. McDougald*, 990 F.2d 259 (6th Cir.1993). In that case, the court vacated defendant's money laundering conviction noting that the government did not prove: (1) that the money in question was drug money; or (2) that the defendant knew that the money was drug money. *McDougald*, 990 F.2d at 261–64. Certainly, a money laundering conviction is supported by constitutionally adequate evidence only where "the record contains sufficient evidence to convince a reasonable juror beyond a reasonable doubt that [defendant] knowingly laundered drug money." *McDougald*, 990 F.2d at 261. Further, the court noted that defendant's mere association with a drug dealer is not constitutionally adequate evidence that laundering of drug money was knowingly undertaken. *McDougald*, 990 F.2d at 262. While the instant case is similar to *McDougald* in some respects, it is concluded that no manifest miscarriage of justice occurred here.

In this case, Climpson does not contest the fact that the money she used to procure the cashier's check used at the closing was drug money. However, Climpson maintains that she did not knowingly launder the money in question. The evidence showed that Richardson left to attend the closing with Climpson in possession of his green money bag containing over $10,000 in cash. Richardson told Hines that he was going to make a down payment on a house. Hines testified that Richardson kept only money obtained from his marijuana sales in the green bag. Prior to the closing, Climpson purchased a cashier's check in the amount of $9,400.02 using 32 $100 bills and other smaller bills. Upon Richardson's return, the green money bag was empty.

Moreover, Hines testified that Climpson smoked marijuana with Richardson and that Richardson sold marijuana to Climpson. Hines testified that she accompanied Richardson in his car as he delivered ¼ to 1 pound quantities to Climpson's house following telephone conversations between Climpson and Richardson. Richardson told Hines that he would occasionally leave his green money bag

at Climpson's house. Viewing the evidence in the light most favorable to the government, evidence exists of record such that no manifest miscarriage of justice occurred.

## G. Ineffective Assistance of Counsel

■ Defendants attempt to assert claims of ineffective assistance of counsel. However, ineffective assistance of counsel claims ordinarily should not be addressed on direct appeal except in the unusual case in which the record is adequate to permit the court to assess the merits of the claims. *See United States v. Daniel*, 956 F.2d 540, 543 (6th Cir. 1992). In the instant case, we conclude that defendant's claims should not be addressed on direct appeal because the claims are such that matters outside the record are pertinent to the issue.

## H. Sentencing Issues

### 1. Quantity of Drugs

■ First, Moss, Kohn and Richardson object to the quantity of marijuana attributed to them at sentencing by the district court. Generally, this court will review only for clear error the district court's conclusions regarding the quantity of drugs involved for sentencing purposes. *United States v. Walton*, 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 *and cert. denied*, 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 541 *and cert. denied*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990). The quantity of drugs must be established by a preponderance of the evidence. *Walton*, 908 F.2d at 1301–02. Moreover, a defendant may be sentenced based upon quantities of drugs attributable to other members of a conspiracy, provided the district court finds that those quantities were known to defendant or were reasonably foreseeable to him. *United States v. Medina*, 992 F.2d 573, 590–91 (6th Cir.1993).

■ With respect to defendants Moss and Kohn, the district court properly found that the conspiracy to import and distribute marijuana involved between 3,000 to 10,000 kilograms of marijuana. The government cited the court to specific testimony which supports the district court's finding and cites

this court to that testimony as well. In short, the 3,000 kilogram quantity attributable these defendants was established by a preponderance of the evidence and no clear error occurred.

■ Next, the district court made a specific finding that acts attributable to others involving between 1,000 and 3,000 kilograms of marijuana were reasonably foreseeable to Richardson. After the government argued that Richardson should be held accountable for the entire amount of marijuana involved in the underlying conspiracy to distribute marijuana, the district court concluded that only 1,000 to 3,000 kilograms were attributable to Richardson. However, the district court did not make more specific findings of fact or otherwise explain its conclusion that this amount was attributable to Richardson. Although reviewed only for clear error, this finding must have "some minimum indicium of reliability." *See United States v. Robison*, 904 F.2d 365, 371 (6th Cir.), *cert. denied*, 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990).

Here, no basis for the district court's conclusion that Richardson is responsible for at least 1,000 kilograms of marijuana is obvious from the record. As has been noted, Richardson was shown to be a seller of marijuana in quantities of one pound or less. Otherwise, his direct involvement in the conspiracy to distribute marijuana was limited to taking possession of 100 pounds of marijuana from Kohn at a time when Kohn was concerned due to the arrest of co-conspirators. Clearly, further shipments of marijuana from Mexico were in doubt. Further, no basis for Richardson to foresee that more marijuana would be involved in the conspiracy at that point is apparent from the record. Accordingly, we conclude that a remand to the district court for resentencing of Richardson is required. Of course, the district court may resentence Richardson based upon the quantities of marijuana involved in the conspiracy which are attributable to him. However, the court must find by a preponderance of the evidence that such quantities are directly attributable to him, or are attributable to him due to conduct of others involved in the conspiracy which was known to him or reasonably foreseeable to him.

**2. Money Laundering Base Offense Level**

■ For the first time on appeal, defendants Climpson and Richardson claim that the district court sentenced them under an inapplicable base offense level. In particular, defendants contend that the district court incorrectly sentenced them under U.S.S.G. § 2S1.1(a)(1) rather than § 2S1.1(a)(2). Essentially, a base offense level of 20 is applicable to money laundering offenses which "merely conceal a serious crime that had already taken place," while a base offense level of 23 is applicable to money laundering offenses which "encouraged or facilitated the commission of further crimes." U.S.S.G. § 2S1.1, comment. (backg'd.) (amended eff. Nov. 1, 1991). At oral argument, the government acknowledged that the incorrect base offense level was used by the district court, but characterized the error as technical in nature. While this court reviews guidelines issues which have been waived because they were not asserted in the district court only for clear error, *see United States v. Nagi*, 947 F.2d 211, 213 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992), the application of a clearly incorrect base offense level in sentencing will be deemed clear error under the circumstances of this case. Accordingly, we conclude that remand to the district court for resentencing of Climpson and Richardson is required with respect to this claim as well.

**3. Obstruction of Justice**

■ Moss contends that the district court erred in adjusting his offense level because he willfully obstructed justice. Generally, the district court has considerable discretion to determine "whether a defendant's actions constitute an obstruction of justice punishable under the guidelines, and we review such decisions under an abuse of discretion standard." *United States v. Medina*, 992 F.2d 573, 591 (6th Cir.1993) (citing *United States v. Bennett*, 975 F.2d 305, 308 (6th Cir.1992)). Here, the district court found that it was reasonable to conclude that Jaeger testified

truthfully with respect to the alleged solicitation of him by Moss to bribe a witness. The district court's determination is adequate and the finding is not clearly erroneous.

#### 4. Minimal or Minor Participant

 Richardson contends that the district court erred in denying his request for a reduction of his offense level as a minor participant in the offense. The district court's findings of fact regarding whether Richardson is entitled to the reduction will be reviewed only for clear error. *See Nagi,* 947 F.2d at 214–15. Defendant must prove by a preponderance of the evidence that he is entitled to the reduction. *Id.* at 215; *United States v. Kingston,* 922 F.2d 1234, 1240 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2054, 114 L.Ed.2d 460 (1991). Here, the record reflects that Richardson did not carry his burden of proof. Although he alleges that he was only a small-time marijuana dealer, he did participate in the conspiracy to the extent that he accepted delivery of 100 pounds of marijuana. Therefore, the district court's determination that Richardson was not a minimal or minor participant is not clearly erroneous.

#### 5. Refusal to Depart Downward

 Richardson appeals the district court's refusal to grant him a downward departure. However, a district court's refusal to depart downward is simply nonappealable. *See United States v. Dellinger,* 986 F.2d 1042 (6th Cir.1993); *United States v. Pickett,* 941 F.2d 411, 417–18 (6th Cir.1991). Accordingly, this claim is without merit.

#### 6. Miscellaneous Claims

 Finally, defendants raise two remaining sentencing guidelines issues which will be deemed waived because they were not asserted in the district court. *See Nagi,* 947 F.2d at 213. Richardson contends that the district court should have granted him a reduction based upon his acceptance of responsibility for his acts. Also, Moss contends that he was not an organizer or leader of at least five people, a claim he specifically withdrew at sentencing. However, it is concluded that neither of these claims constitutes

clear error cognizable in the face of defendants' waiver.

### III.

For the foregoing reasons, the defendants' convictions are **AFFIRMED**. The sentences of defendants Moss and Kohn are **AFFIRMED**. The sentences of defendants Richardson and Climpson are **VACATED** and the case is **REMANDED** to the district court for resentencing of those defendants.

BATCHELDER, Circuit Judge, concurring.

I write separately simply to clarify what I believe to be the appropriate standard of review of the *Enright* issue and the outcome dictated by that standard. The majority opinion first references the abuse-of-discretion standard, then says "we need not reach the question of which standard of review is most appropriate because we conclude that no reversible error was committed," and finally says there was "no error." I believe we must decide which standard of review applies, because our prior case law does not suggest that the district court's conclusory statement in this case is entirely unobjectionable.

In *United States v. Gessa,* 971 F.2d 1257 (6th Cir.1992) (en banc), this Court, sitting en banc, said:

Although it is often stated that we apply an abuse of discretion standard to a district court's evidentiary rulings, we believe this statement sweeps to broadly in regard to Rule 801(d)(2)(E), which requires that specific factual determinations and legal conclusions be made in order for the evidence to be admitted. In order to admit the statement of a co-conspirator under Fed.R.Evid. 801(d)(2)(E), it must first be determined that the conspiracy existed, that the defendant was a member of the conspiracy, and that the co-conspirator's statements were made "in furtherance of the conspiracy." These are factual determinations governed by the clearly erroneous standard of review.

... [The district court found that the three factual components of 801(d)(2)(E) were

met.] Based on these factual determinations, the district court concluded that Rule 801(d)(2)(E) permitted the "otherwise hearsay" co-conspirators' statements to be received as "not hearsay." This is a question of law, which we review de novo.

*Id.* at 1261 (footnote and citation omitted). Thus, ordinarily the appropriate standard of review is not the majority's blanket abuse-of-discretion standard, but the dual standard noted in *Gessa*—factual conclusions reviewed for clear error and legal conclusions reviewed de novo. In this case, however, the defendants failed to object to the court's conclusory finding. This failure to object waived any claim of error the defendants may allege, *see* Fed.R.Evid. 103, and our resulting standard of review is that of plain error, *see* Fed. R.Evid. 103; Fed.R.Crim.P. 52(b). Under the plain error standard, we review the alleged error to see whether it seriously affected substantial rights and had an unfairly prejudicial influence on the outcome of the case. *See United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

Reviewing the court's finding under the plain error standard, I find no manifest miscarriage of justice. The district court considered the *Enright* issue and decided that there was "clearly ... no problem" with admitting the evidence. My independent review of the record supports this conclusion. Because the defendants did not request more detailed findings on the issue, I find no plain error and thus agree with the majority that this assignment of error is unpersuasive.