28 F.3d 1215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George E. WILLIAMS, Defendant-Appellant.
 No. 93-6166.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1994.
 
 Before: MARTIN, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 George E. Williams appeals his conviction by a jury and the sentence imposed by the district court on charges of conspiracy to possess with the intent to distribute, aiding and abetting possession with the intent to distribute, and possession with the intent to distribute 500 grams or more of cocaine. Williams asserts that the evidence presented at trial was insufficient to support his convictions, and contends that the district court improperly enhanced his base offense level under the United States Sentencing Guidelines for obstruction of justice. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 On June 8, 1992, undercover narcotics officers from the Rutherford County, Tennessee Sheriff's Department and the Murfreesboro, Tennessee Police Department sold one kilogram of cocaine to Williams and codefendant Howard Young in a "reverse sting" operation. Young subsequently pled guilty to several charges and agreed to testify for the government at Williams' trial.
 
 
 3
 Undercover officer Melvin Cunningham had previously discussed the arrangements for the drug transaction with Young, but had never met or talked with Williams before June 8. On this date, Cunningham met Williams and Young in a parking lot on Route 231 in Murfreesboro. They then proceeded together, in separate cars, to a warehouse at 338 Broad Street. Upon arriving at the warehouse, Cunningham informed Williams and Young that he would have to search them for weapons. After Williams agreed to leave the handgun he had with him under the front seat of his car, the three men entered the warehouse and went to a table that had been set up for the drug deal. An audio tape recorder and a videocamera recorded the transaction, but the audio portions of both recordings later proved to be largely unintelligible.
 
 
 4
 According to the trial testimony of Young and the narcotics officers, Williams, upon reaching the table, asked to see the drugs that he was going to buy. An officer brought him a clear plastic bag containing one kilogram of cocaine, which Williams shook back and forth. Again according to the other witnesses' testimony, Williams then stated that "there [is] no cut on it" (the cocaine was not adulterated), because it did not adhere to the sides of the bag. At the same time, Williams placed $9,560 in cash on the table and gave the officers a ring from his finger as partial payment for the cocaine. At this point, an officer gave a prearranged code signal, and Williams and Young were arrested.
 
 
 5
 On December 2, a federal grand jury returned a three-count indictment against Williams. Count One charged him with knowing possession of stolen clothes dryers transported in interstate commerce, in violation of 18 U.S.C. Sec. 659. These clothes dryers were apparently intended to be part of Williams' payment for the cocaine. Count Two charged Williams with aiding and abetting the possession and possession with the intent to distribute 500 grams or more of cocaine, in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 841(a)(1). Count Three charged him with conspiracy to possess with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. Sec. 846. Count One of the indictment was eventually dismissed by the government prior to Williams' trial.
 
 
 6
 Williams filed two pretrial motions to have an independent expert examine the videotape of the drug transaction, claiming that the tape had been altered and that he had been "framed." The district court denied the first motion, but eventually granted the second motion after the trial had already begun, apparently because Williams had stated by that time that he would pay for the expert's services. Williams' expert examined the tape, but Williams did not attempt to offer the expert's conclusions into evidence. Instead, Williams took the stand, admitting that he bought the drugs at the warehouse on June 8, but asserting that he had done so because he felt threatened and "just wanted to leave," having actually come to the warehouse at Young's request in order to examine and invest in certain telemarketing products. Williams further maintained that the videotape did not accurately reflect what occurred between him and the officers, and that the tape therefore must have been altered.
 
 
 7
 As noted above, Young also testified at trial, and corroborated the testimony given by the undercover officers. He stated that his former attorney had introduced him to Williams, prior to June 8, as a person that might be interested in putting together a cocaine deal. Young further asserted that, during his pretrial incarceration, Williams approached him several times in order to ask him to sign a prepared statement accepting complete responsibility for the cocaine deal. Young refused to sign the statement, and a correctional officer's report indicates that Williams subsequently instigated a fight with Young immediately outside of Young's cell.
 
 
 8
 The jury ultimately convicted Williams on Counts Two and Three of the indictment. On August 12, 1993, the district court sentenced him to eight years and one month of imprisonment, to be followed by four years of supervised release. In calculating a potential guideline sentencing range of between eight years and one month, and ten years and one month, the district court increased Williams' base offense level by two levels for obstruction of justice under Guideline Section 3C.1.1. The court explained that it found Young's testimony to be "persuasive regarding the incidents of threats, coercion, and assault," and concluded that an obstruction of justice enhancement was warranted by the preponderance of the evidence. Williams filed this timely appeal.
 
 
 9
 Williams asserts that the evidence presented at trial was insufficient to support his convictions. In assessing the sufficiency of evidence, "this Court has long declined to weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." United States v. Ferguson, Nos. 91-3866/3954/3955, 1994 WL 160206, at * 3, slip op. at 5 (6th Cir. May 3, 1994). Instead, under Jackson v. Virginia, 443 U.S. 307, 319 (1979), the question we must answer is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 
 
 10
 Applying this standard, we see that in order to obtain a conviction for conspiracy under 21 U.S.C. Sec. 846, "the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." Ferguson, 1994 WL 160206 at * 3, slip op. at 5 (citations omitted). Furthermore, the government must present sufficient evidence to establish a defendant's participation in the conspiracy beyond a reasonable doubt. Id. at * 3, slip op. at 6. Here, Young's presence during the drug deal, the fact that he accompanied Williams to the warehouse, Officer Cunningham's testimony, and the videotape evidence are sufficient for a reasonable jury to have found, beyond a reasonable doubt, that Williams was involved in a conspiracy to possess with the intent to distribute cocaine. Under the Jackson standard, this evidence is also sufficient to support Williams' convictions for aiding and abetting possession, and possession, of 500 grams or more of cocaine.
 
 
 11
 Williams contends that the district court improperly added two levels for obstruction of justice to his base offense level under Section 3C1.1 of the Sentencing Guidelines. In this regard, he maintains that the preponderance of the evidence did not establish that he threatened or intimidated Young. Section 3C1.1 provides as follows: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by two levels." U.S.S.G. Sec. 3C1.1. Application Note 3(a) to this provision states that "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so" is an example of the type of conduct to which Section 3C1.1 applies. U.S.S.G. Sec. 3C1.1, comment. (n. 3(a)).
 
 
 12
 We review a district court's determination that a defendant's conduct constitutes an obstruction of justice under the Sentencing Guidelines for an abuse of discretion. United States v. Moss, 9 F.3d 543, 553 (6th Cir.1993) (citations omitted). Here, the district court did not abuse its discretion by concluding, on the evidence before it, that Williams threatened and intimidated Young within the meaning of Section 3C1.1.
 
 
 13
 For the foregoing reasons, the judgment of the district court is affirmed.