60 F.3d 829
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Pedro TEJADA, Defendant-Appellant.
 No. 94-3367.
 United States Court of Appeals, Sixth Circuit.
 June 27, 1995.
 
 Before: KRUPANSKY, MILBURN, and BATCHELDER, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant appeals his sentence following a guilty plea to one count of conspiring to distribute and possess with the intent to distribute cocaine in violation of 21 U.S.C. Sec. 846. On appeal, the issues are (1) whether the district court erred by not awarding defendant an additional one-point reduction in his offense level for acceptance of responsibility pursuant to United States Sentencing Guidelines ("U.S.S.G.") Sec. 3E1.1(b)(1), (2) whether the district court erred by not finding that defendant was a minimal or minor participant pursuant to U.S.S.G. Sec. 3B1.2, and (3) whether the district court erred by failing to apply a totality of the circumstances approach to its sentencing decision. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 In January of 1993, officers with the Franklin County Sheriff's Office began to conduct surveillance of defendant Pedro Tejada and his coconspirators, Joseph Lacey and Garrett Boyer. On January 31, 1993, Detective Turner, an undercover officer, witnessed an exchange between Lacey and defendant Tejada. After the exchange, officer observed defendant place a bag in the engine compartment of a Honda automobile which officers had seen him drive on previous occasions. On February 3, 1993, Detective Hunt, also working in an undercover capacity, made a controlled purchase of one-half ounce of cocaine from Lacey for $500. Detective Hunt made a controlled purchase of an additional two ounces of cocaine from Lacey for $1900 on March 5, 1993. On March 19, 1993, Detective Turner overheard a conversation between defendant and Boyer during which defendant stressed the importance of Boyer furnishing defendant with weapons or guns. Detective Hunt made another controlled purchase of three ounces of cocaine from Lacey for $3000 on May 6, 1993. During this transaction, Detective Hunt and Lacey discussed the possibility of Detective Hunt buying a quarter of a kilogram of cocaine for $8500. At that time, Lacey indicated that it was a possibility by telling Detective Hunt, "My boy will be in Friday." J.A. 59. The next day, Lacey paged Detective Hunt to let him know that Lacey would have the cocaine for Detective Hunt the following day.
 
 
 3
 Following these three controlled purchases, on May 9, 1993, officers conducted a search of Lacey's apartment pursuant to a search warrant. The officers found $35,000 in cash wrapped by denominations; two packages of cocaine weighing 527.5 grams and 306.6 grams, respectively, in Lacey's bedroom; 35.3 grams of cocaine in Lacey's jacket pocket; three sets of weighing scales; and two pagers. Defendant stipulated that one of the pagers belonged to him.
 
 
 4
 Defendant was not on the premises, but a Buick Electra with New Jersey plates in which defendant had often been seen was located outside Lacey's apartment. Upon executing a search warrant on the Buick, officers discovered a hidden compartment behind the rear seat. Inside the compartment officers found approximately 500 grams of cocaine. When defendant was interviewed after his arrest, he admitted that he had driven the Buick to Columbus that weekend. The officers found an address book in defendant's wallet that contained Lacey's telephone number, pager number, and mobile telephone number.
 
 
 5
 On the same day the search warrant was executed, May 9, 1993, officers interviewed Lacey. Lacey stated that he had met defendant through a Hispanic male named "Jerry" around September 1992 and that defendant would deliver cocaine to Lacey from the New York/New Jersey area. About a month after meeting defendant, Lacey fronted defendant one-half a kilogram of cocaine on two separate occasions. Defendant and Lacey met about four or five times after that, and defendant delivered cocaine to Lacey on one or two of those occasions. Lacey also stated that the money found during the search of his apartment was money that defendant was supposed to return to the supplier for previously fronted cocaine. In later interviews, Lacey indicated that defendant was responsible for delivering cocaine from suppliers named "Jerry" and "Manny" in the New York/New Jersey area. Lacey stated that defendant drove a Honda automobile in which drugs were hidden under the front hood beneath a plastic grill near the windshield wipers. Lacey also acknowledged that the cocaine found in his apartment on May 9, 1993, had been delivered by defendant.
 
 
 6
 In his interview with the Probation Officer, defendant admitted delivering cocaine to Columbus for "some guys" that he met in a bar in the New York/New Jersey area in exchange for $500. Defendant stated that he had made five to six trips to Ohio, but he did not indicate how many of those trips involved the delivery of cocaine. He stated that he never delivered more than one-half kilogram of cocaine, and he admitted that he sometimes took money back to the suppliers in the New York/New Jersey area. Defendant admitted that he knew of the hidden compartment in the Buick but claims he did not know of the hidden area in the Honda. He admitted discussing the acquisition of firearms with Lacey, but he contends that he was merely curious about how a person could purchase guns in the state of Ohio. Defendant claims that he was not aware of the cocaine and money that was found in Lacey's apartment, but he admitted he was aware of the cocaine found in the Buick.
 
 B.
 
 7
 On May 20, 1993, the grand jury returned a six-count indictment naming defendant Pedro Tejada in three of the counts. Count one charged defendant with conspiring to distribute and possess with the intent to distribute over 500 grams of cocaine from May 1, 1991, through and including May 20, 1993, in violation of 21 U.S.C. Sec. 846. Counts five and six charged defendant with unlawfully possessing with the intent to distribute over 500 grams of cocaine in violation of 21 U.S.C. Sec. 841(a)(1), 21 U.S.C. Sec. 841(b)(1)(B)(ii), and 18 U.S.C. Sec. 2.
 
 
 8
 A jury trial began on September 27, 1993. On September 28, 1993, after a prospective jury was selected but before the jury was sworn, defendant changed his plea of not guilty to guilty in accordance with a plea agreement. Pursuant to the plea agreement, defendant agreed to plead guilty to count one of the indictment. Defendant stated that he understood that there was a mandatory minimum term of imprisonment of five years that would be imposed based on his plea of guilty. The government agreed to recommend a downward departure for defendant's acceptance of responsibility for the offense charged in count one, and defendant understood that the final determination of this issue rested with the district court. The government also agreed to dismiss counts five and six at the time of sentencing. There was no provision in the plea agreement for cooperation, and there was no provision requiring the government to file a motion under U.S.S.G. Sec. 5K1.1 or 18 U.S.C. Sec. 3553 for a downward departure for substantial assistance.
 
 
 9
 On March 3, 1994, defendant was sentenced by the district court. The Probation Officer recommended that defendant not be awarded a reduction in his offense level for acceptance of responsibility. However, the district court granted, in part, defendant's objection to the probation officer's recommendation on the issue of acceptance of responsibility by making a two-level reduction, but not a three-level reduction, for acceptance of responsibility. The district court denied defendant's objection concerning his role in the offense by refusing to grant either a four-level or two-level reduction for minimal or minor role in the offense and by refusing to make a downward departure for unusual circumstances because it concluded that defendant played an integral role in the conspiracy over a substantial period of time. Accordingly, the district court computed a total offense level of 24 with a criminal history category of I, which corresponded to an applicable sentencing range of 51 to 63 months.
 
 
 10
 The district court sentenced defendant to the statutory mandatory minimum of five years imprisonment, as well as four years supervised release and a $50 special assessment. This timely appeal followed. We have jurisdiction pursuant to 18 U.S.C. Sec. 3742(a) and 28 U.S.C. Sec. 1291.
 
 II.
 A.
 
 11
 Defendant argues that the district court erred by not awarding him an additional one-point reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. Sec. 3E1.1(b)(1). Although defendant concedes that he does not qualify for an additional one-point reduction under subsection (b)(2), he asserts that he qualifies for an additional one-point reduction under subsection (b)(1) because he timely provided complete information to the government concerning his own involvement in the offense.
 
 
 12
 Under U.S.S.G. Sec. 3E1.1(a), a defendant who clearly demonstrates acceptance of responsibility may receive a two-level reduction in his offense level. In addition:
 
 
 13
 If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
 
 
 14
 (1) timely providing complete information to the government concerning his own involvement in the offense; or
 
 
 15
 (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,
 
 
 16
 decrease the offense by 1 additional level.
 
 
 17
 U.S.S.G. Sec. 3E1.1(b).
 
 
 18
 In ruling on defendant's objection to the Probation Officer's recommendation that defendant not be awarded a reduction in his offense level for acceptance of responsibility, the district court stated:
 
 
 19
 On balance, and considering the defendant's frank admission of his role in the conspiracy, the Court concludes that the defendant should receive a two[-] level reduction for acceptance of responsibility under Section 3E1.1(a) of the guidelines.
 
 
 20
 The defendant, however, is not entitled to the additional one[-]level reduction under Section 3E1.1(b). He did not timely--and I emphasize timely--provide complete information to the government, or timely--and again timely is emphasized--notify authorities of his intention to enter a plea of guilty to permit the government to avoid preparing for trial. Instead, the defendant did not enter his plea of guilty until after the trial had commenced.
 
 
 21
 As the commentary points out, Application Note 6, "In general, the conduct qualifying for a decrease in offense level under subsection (b)(1) or (2), will occur particularly early in the case." That simply, of course, did not happen here.
 
 
 22
 The defendant then is entitled to a two[-]level reduction under [Sec.] 3E1.1(a) but is not entitled to a three[-]level reduction.
 
 
 23
 J.A. 67-68.
 
 
 24
 "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. Sec. 3E1.1 commentary (application note 5). Therefore, "a district court's acceptance of responsibility determination will be reviewed under a 'clearly erroneous' standard of review." United States v. Fleener, 900 F.2d 914, 917 (6th Cir. 1990); see also United States v. Chalkias, 971 F.2d 1206, 1216 (6th Cir.) (per curiam), cert. denied, 113 S. Ct. 351 (1992); United States v. Wilson, 878 F.2d 921, 923 (6th Cir. 1989). Applying this deferential standard, we cannot say that the district court erred in denying defendant an additional one-level reduction for acceptance of responsibility. The district court recognized that defendant had admitted his role in the conspiracy. However, the district court did not believe that defendant had timely provided complete information to the government concerning the offense.
 
 
 25
 We agree with the district court that timeliness is an important consideration in determining whether a defendant is entitled to an additional one-point reduction under U.S.S.G. Sec. 3E1.1(b). "Timely" is the first word of both subsections (b)(1) and (b)(2). The commentary to U.S.S.G. Sec. 3E1.1(b) states, "The timeliness of the defendant's acceptance of responsibility is a consideration under both subsections [(a) and (b)], and is context specific. In general, the conduct qualifying for a decrease in offense level under subsection (b)(1) or (2) will occur particularly early in the case." U.S.S.G. Sec. 3E1.1 commentary (application note 6). In addition, the commentary states that a defendant's acceptance of responsibility merits an additional one-point reduction where the defendant has "demonstrate[d] acceptance of responsibility ... in a timely fashion" "in a way that ensures the certainty of his just punishment in a timely manner." U.S.S.G. Sec. 3E1.1 commentary (background). Therefore, an additional one-point reduction for acceptance of responsibility may be denied based solely on the district court's finding that the defendant did not meet the timeliness element.
 
 
 26
 Defendant claims that "it was his refusal to provide information about nonconviction conduct and the alleged criminal activities of others which caused the Court to withhold the third and final point" and that "[i]nformation given for the purposes of substantial assistance need not be timely." Appellant's Brief at 8-9. We agree with defendant's implication that the timely requirement goes only to whether defendant timely provided information about his own involvement in criminal activity rather than the conduct of others. However, even if we were to conclude that the district court erroneously denied an additional one-point reduction because defendant did not timely provide information about the conduct of others, defendant's sentence would have been the same--the statutory minimum imprisonment term of five years. See U.S.S.G. 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). Therefore, we do not need to address this argument further because the precise computation of the offense level was irrelevant in determining defendant's sentence, and any error would not have had any effect on defendant's substantial rights. See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); United States v. Rodriguez-Razo, 962 F.2d 1418, 1420 (9th Cir. 1992) ("If the error resulted from a misapplication of the Sentencing Guidelines, but did not affect the district court's choice of the sentence imposed, the error is harmless and remand is not required"); see also United States v. Gonzalez-Balderas, 11 F.3d 1218, 1225 (5th Cir.) (rejecting a claim of error in enhancing a defendant's sentence because the defendant's Guideline sentence would be the same regardless of the disposition of the objection), cert. denied, 114 S. Ct. 2138 (1994); United States v. Ivory, 11 F.3d 1411, 1413 (7th Cir. 1993) (per curiam) (refusing to decide whether the district court erred in denying an offense level reduction because the determination would have no impact on the defendant's sentence).
 
 B.
 
 27
 Defendant next argues that the district court erred by not finding that he was a minimal or minor participant pursuant to U.S.S.G. Sec. 3B1.2. "[Defendant] asserts that his conduct and status as a short time, expendable, occasional courier in a large operation, the scope of which he had little knowledge, in and of themselves indicate his minimal role." Appellant's Brief at 15.
 
 
 28
 U.S.S.G. Sec. 3B1.2 contemplates an offense involving concerted activity on the part of more than one participant and provides that the district court is to reduce the offense level by four levels upon finding that a defendant was a "minimal participant" or by two levels upon finding that the defendant was a "minor participant." A minimal participant is one "who [is] plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. Sec. 3B1.2 commentary (application note 1). The Sentencing Commission "intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, ... in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. Sec. 3B1.2 commentary (application note 2). "[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. Sec. 3B1.2 commentary (application note 1). On the other hand, a minor participant is "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. Sec. 3B1.2 commentary (application note 3).
 
 
 29
 The defendant bears the burden of proving by a preponderance of the evidence that mitigating factors exist which warrant a reduction for his minimal or minor role in the offense. United States v. Moss, 9 F.3d 543, 554 (6th Cir. 1993); United States v. White, 985 F.2d 271, 274 (6th Cir. 1993). The district court's determination concerning a defendant's role in the offense constitutes a factual finding which is reviewed only for clear error. Moss, 9 F.3d at 554; White, 985 F.2d at 274.
 
 
 30
 When the district court overruled defendant's objection to the Probation Officer's recommendation that defendant not be given a reduction in his offense level for minimal or minor role, it stated:
 
 
 31
 I think Mr. Tejada's role was really not, as [his counsel] characterized it, a troubleshooter. I think his role truly, actually was that of a courier, a courier of drugs, a courier of money. But that does not automatically entitle him to some reduction as a minor participant. A courier of drugs coming in, money going back, can play as active and culpable role in the drug conspiracy as any other participant.
 
 
 32
 While Mr. Tejada apparently did not have any customers of his own, ... his role, it appears to the Court, was essential to the success of the conspiracy. It lasted over a significant period of time, it involved repeated trips to Ohio with large amounts of cocaine, and it involved the defendant's assistance in transporting money back to the New Jersey area in payment for the cocaine delivered.
 
 
 33
 The Court concludes that Mr. Tejada's role in this particular conspiracy was not minor and that he is not entitled to the two[-]level reduction.
 
 
 34
 J.A. 71-72. Although the district court recognized that defendant's role in the conspiracy was limited to that of a courier, it noted that defendant's involvement was ongoing and that the conspiracy relied on defendant's participation to make it work. We conclude that the district court's conclusion that defendant was not a minimal or minor participant is not clearly erroneous.
 
 C.
 
 35
 Finally, defendant argues that the district court erred by failing to apply a totality of the circumstances approach to its sentencing decision. He claims that the district court should have given special consideration to the unique facts surrounding this case. The legal basis of defendant's argument is unclear, but we believe that defendant is objecting to the district court's failure to depart downward. We note that the government also construed defendant's argument in this manner, and defendant did not submit a reply brief to clarify any misinterpretation.
 
 
 36
 "A district court's failure to depart from the Guidelines range is not cognizable on appeal under 18 U.S.C. Sec. 3742(a) when the district court properly computes the Guidelines range, imposes a sentence that is not illegal or did not result from an incorrect application of the Guidelines range, and is not unaware that it had discretion to depart from the Guidelines range." United States v. Brannon, 7 F.3d 516, 521-22 (6th Cir. 1993). To state it another way, "a district court's refusal to depart downward is simply nonappealable." Moss, 9 F.3d at 554.
 
 
 37
 In denying defendant's request for a downward departure, the district court stated:
 
 
 38
 The Court is of the opinion that there hasn't been anything brought to the Court's attention in this case that would ... warrant a downward departure under Section 5K2 of the sentencing guidelines, 5K2.0.
 
 
 39
 J.A. 78. The district court understood that had the discretion to depart downward from the sentencing guideline range, but it found that such a departure was not warranted. Accordingly, defendant's argument is without merit.
 
 III.
 
 40
 For the reasons stated, the sentence imposed by the district court is AFFIRMED.