**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Christopher Garard MATTHEWS, Defendant-Appellant.**

**No. 27136**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

June 15, 1970.

---

**7.** II Wigmore on Evidence (Third Ed.) § 304 at 202.

Robert C. Lanquist, Jacksonville, Fla. (Court Appointed), for appellant.

Clinton Ashmore, U. S. Atty., Stewart Jack Carrouth, Asst. U. S. Atty., Tallahassee, Fla., for appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

■ Appellant Matthews was convicted of knowingly importing and bringing into the United States a quantity of marihuana in violation of 21 U.S.C.A. § 176a. He presents two points of significance on appeal: (1) the government failed to prove an importation because it proved only that he brought the marihuana from one part of the United States to another, *viz.*, from the Panama Canal Zone to Florida; and (2) reversal is required because the trial judge gave an instruction on the presumption in Section 176a which was declared unconstitu-

tional in Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57. We think there was an importation but agree that the forbidden instruction on the presumption requires a new trial.[1]

The government's evidence tended to show that Matthews flew nonstop from the Canal Zone, where he was stationed in the military service, to Elgin Air Force Base in Florida. Customs inspectors discovered about 10 ounces of marihuana in his baggage in the form of 805 marihuana cigarettes packaged in name brand cigarette cartons. Matthews denied knowing that the cigarettes contained marihuana. There was no evidence whatever tending to show importation of the marihuana into the Canal Zone or to show its origin and movement prior to its presence in the Canal Zone.

I.

21 U.S.C.A. § 176a provides in part that whoever knowingly "imports or brings into the United States marihuana contrary to law" is guilty of a crime which carries a minimum five year sentence. For purposes of the Narcotic Drugs chapter in which Section 176a appears, "United States" is defined to include "the several States and Territories, and the District of Columbia." 21 U.S.C.A. § 171(b). Matthews argues that the Canal Zone is a "territory" and that it therefore is within the definition of "United States." Since the Canal Zone is in the United States, he cannot, he argues, be convicted of "importing" anything from there to Florida.

■ It may well be, as Matthews argues, that the Canal Zone is a "territory" for 176a purposes. However, we need not reach that question. Even assuming that the Canal Zone is a "territory," this fact would show only that Congress intended to prohibit importation of marihuana into the Zone. It would not necessarily show an intention to exclude from the prohibition of the statute the transportation of marihuana

---

1. Pursuant to our Rule 18 this case is decided without oral argument.

from the Canal Zone to a state in the United States. Nor can we believe that Congress had such an intention. Even though Section 176a prohibits the importation of marihuana *into* territories of the United States, we think the section is also broad enough to prohibit transportation *from* a territory to one of the states. Thus, even if the Canal Zone is a "territory" within Section 176a, it is still a crime to import marihuana from there to a state of the United States.

■ This conclusion is supported by statutes and decisions in analogous areas. For example, 19 U.S.C.A. § 126 provides:

All laws affecting imports of articles, goods, wares, and merchandise and entry of persons into the United States from foreign countries shall apply to articles, goods, wares, and merchandise and persons coming from the Canal Zone, Isthmus of Panama, *and seeking entry into any State or* Territory of the United States or the District of Columbia.

Since this section appears in the Customs Duties part of the United States Code it is not conclusive as to the criminal importation dealt with in 21 U.S.C.A. § 176a. However, we think it does reveal a general congressional intention that the Canal Zone is to be regarded as a foreign country where matters of commerce are concerned. The Supreme Court has also apparently read 19 U.S.C.A. § 126 the same way. In Luckenbach S. S. Co. v. United States, 280 U.S. 173, 50 S.Ct. 148, 74 L.Ed. 356, the question was whether the Canal Zone was a "foreign port" within Section 4009 of the Revised Statutes, 17 Stat. 316, dealing with "transporting the mail between the United States and any foreign port." In answering the question affirmatively the Court relied in part on Section 126 quoted above:

Whether the grant in the treaty [under which the United States acquired the rights it possesses in the Canal Zone] amounts to a complete cession of territory and dominion to the United States or is so limited that it leaves at least titular sovereignty in the Republic of Panama, is a question which has been the subject of diverging opinions and is much discussed in the briefs. But for the purposes of this case the construction of the treaty in that regard need not be examined as an original question;—and this because a long continued course of legislative and administrative action has operated to require that the ports in the Canal Zone be regarded as foreign ports within the meaning of § 4009.

By the Act of March 2, 1905, c. 1311, 33 Stat. 843 [now 19 U.S.C.A. § 126], which came within less than two years after the treaty, Congress declared that the laws regulating the importation of merchandise and the entry of persons into the United States from foreign countries should apply to and control the importation of merchandise and the entry of persons from the Canal Zone into any state or territory of the United States or the District of Columbia; and on September 8, 1909, 27 Op.Attys.Gen. 594, the Attorney General, in an opinion given to the Secretary of War, held that the Canal Zone was not a possession of the United States within the meaning of the Tariff Act of August 5, 1909, c. 6, 36 Stat. 11, imposing specified rates of duty upon various articles when imported from a foreign country into the United States or "into any of its possessions." *Id* at 177–178, 50 S. Ct. at 149.

In reaching its conclusion that for postal purposes the Canal Zone was a foreign port, the Court discussed the status given the Zone in other areas of the law:

By § 12 of an Act of August 24, 1912, c. 390, 37 Stat. 569, Congress, while extending to the Canal Zone the laws of the United States relating to extradition and the rendition of fugitives from justice, declared that for

such purposes, "and such purposes only," the Zone should be treated as an organized Territory of the United States, and by § 9 of an Act of August 21, 1916, c. 371, 39 Stat. 529, Congress provided that the laws of the United States relating to seamen of vessels of the United States when "on foreign voyages" should apply to the seamen of all vessels of the United States when in the Canal Zone.

In 1925, the Department of Labor, construing a provision in the Immigration Act of February 5, 1917, c. 29, 39 Stat. 874, relating to seamen on board vessels arriving in the United States from "any foreign port or place," ruled that the ports in the Canal Zone should be deemed foreign ports in the sense of that Act, Par. 4, Rule 6, Immigration Laws and Rules of 1925; and in 1926 the Comptroller General held that, *as ports in the Canal Zone are considered foreign ports in the absence of special provision to the contrary*, an alien seaman shipping on an American vessel from a port in the Canal Zone is limited in the matter of relief to such as may be extended to an alien seaman shipping on an American vessel from a foreign port. 5 Dec.Comp.Gen. 647.

█ True, there have been instances in which Congress specially provided that for particular purposes the Canal Zone should be treated as a Territory or possession of the United States. This is illustrated in the provision already cited relating to extradition and the rendition of fugitives from justice, and in the acts relating to the liability of carriers by railroad for injuries suffered by their employees, c. 149, 35 Stat. 5, to espionage, c. 30, title 13, 40 Stat. 231, and to sabotage, c. 59, 40 Stat. 533. *But the purposes for which these special provisions were made were such that nothing was subtracted thereby from the force of the provisions before mentioned wherein, for purposes connected with importation, immigration and ocean transportation between the United States and the Canal Zone, Congress required that ports in the latter be regarded as foreign ports.* (Emphasis added). *Id*. at 180–181, 50 S.Ct. at 150.

This language further reinforces our own conclusion that in matters relating to transportation between the Canal Zone and a state in the United States the Canal Zone is to be regarded as a foreign country unless there is a specific provision to the contrary. *Cf*. Ares v. S/S Colon, D. Canal Zone 1967, 269 F. Supp. 763, relying on *Luckenbach* and holding that although Canal Zone ports might be considered as ports of the United States for some purposes, a Panamanian corporation furnishing supplies to foreign ships in those ports was not an "American supplier" to whom the priority of the Ship Mortgage Act, 46 U.S.C.A. § 951 was afforded. Similarly, while it may be that for some purposes in 21 U.S.C.A. § 176a the Canal Zone is a territory or part of the United States over which Congress has legislated concerning the inflow of marihuana and drugs, it is not a part of the United States for purposes of determining whether or not goods transported from there to a state in the United States are "imported" into the United States.

## II.

█ The instant case was pending when Leary v. United States, *supra*, was handed down on May 19, 1969. The trial judge had instructed the jury in terms of the Section 176a presumption struck down by *Leary* that possession, unless explained by the defendant to the satisfaction of the jury, is sufficient to authorize conviction. Even though there was some direct evidence of importation, we cannot say in this case that beyond a reasonable doubt the giving of the unconstitutional instruction was harmless error within Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, or Harrington v. Cali-

**996**

fornia, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

In view of our disposition of the case, none of the other points raised by the parties need be considered.

*Reversed and remanded.*