57 F.3d 1072
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Mario PUJOL (93-4354), Clarence J. Royce (94-3297), Thomas
L. Bronaugh (94-3294), and David Q. Williams
(94-3062), Defendants-Appellants.
 Nos. 93-4354, 94-3297, 94-3062 and 94-3294.
 United States Court of Appeals, Sixth Circuit.
 June 5, 1995.
 
 Before: KEITH and NELSON, Circuit Judges, and HORTON, District Judge.*
 PER CURIAM.
 
 
 1
 This is a group of drug cases in one of which the defendant -- a man who had two prior felony convictions for drug trafficking -- was sentenced as a career offender, under U.S.S.G. Sec. 4B1.1, after pleading guilty to a charge of conspiracy to distribute cocaine and marijuana. On appeal, this defendant has belatedly challenged the validity of the Sentencing Guidelines directive under which he was classified as a career offender. The challenge will be rejected, but his case will be remanded on other grounds. The appeal of another defendant will be dismissed for lack of jurisdiction, and we shall affirm the judgments entered with respect to the remaining defendants.
 
 
 2
 * Early in 1990 defendant Thomas L. Bronaugh, then a resident of Cincinnati, began buying marijuana and cocaine from a man in Florida named Joe Rodriguez. Rodriguez, who also had interests in the horse racing industry, hired defendant Mario Pujol as a trainer for his horses. According to Rodriguez Mr. Pujol's duties included transporting marijuana and cocaine from Miami to Cincinnati. Mr. Pujol was said to have made seven or eight such trips for Rodriguez, accompanied sometimes by defendant David A. Williams. Mr. Pujol -- who was supposed to have been paid $500 or $1,000 per kilogram of cocaine and $200 per pound of marijuana -- claimed that he did not know about the drugs (which were concealed in the side panels of his pickup truck) and believed that the trips related solely to his legitimate work as a horse trainer.
 
 
 3
 Defendant Bronaugh, working with various members of his family, operated a Cincinnati-based drug ring that was the subject of a lengthy FBI investigation.[1] A tap on the telephone of Djuan Bronaugh, defendant Bronaugh's brother, intercepted several calls that were either initiated by defendant Clarence Royce or in which Royce was referred to. Mr. Royce purchased cocaine and marijuana from the Bronaughs for further distribution and sale.
 
 
 4
 In March of 1993 the FBI photographed Mr. Pujol, among others, unloading his pickup truck at an address the FBI considered a focal point of the Cincinnati distribution business. In May of 1993 federal agents arrested Mr. Rodriguez, defendants Bronaugh, Pujol, Royce, and Williams, and several other people following a delivery of some twenty kilograms of cocaine to members of the conspiracy in Cincinnati.
 
 
 5
 A federal grand jury returned a thirteen-count indictment against the above-named defendants and twelve other people. Defendants Bronaugh, Williams, and Royce pleaded guilty to the first count of a superseding information charging them with conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. Sec. 846. Mr. Pujol proceeded to trial and was found guilty on the same conspiracy count. He was also convicted of possession of 19 kilograms of cocaine with intent to distribute it, a violation of 18 U.S.C. Sec. 2.
 
 II
 
 6
 We turn first to the issue of defendant Bronaugh's sentence. The district court classified Mr. Bronaugh as a career offender, pursuant to U.S.S.G. Sec. 4B1.1. This meant that his guideline sentencing range was substantially higher than it otherwise would have been. Even after a sentence reduction was granted, on motion of the government, under U.S.S.G. Sec. 5K1.1, Mr. Bronaugh received a sentence of imprisonment for 160 months.
 
 
 7
 One of the prerequisites to career offender classification is that "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." U.S.S.G. Sec. 4B1.1(2). The term "controlled substance offense" is defined in the guidelines as an offense involving, among other things, "distribution or dispensing of a controlled substance." U.S.S.G. Sec. 4B1.2(2). A guideline application note says that this includes "the offenses of a aiding and abetting, conspiring, and attempting to commit such offenses." Id., Application Note 1 (emphasis added). Mr. Bronaugh had two prior felony convictions for drug trafficking,[2] and he was classified as a career offender on the strength of those convictions and the instant conspiracy conviction.
 
 
 8
 Mr. Bronaugh did not challenge his career offender classification in this court until he filed his reply brief. We are not required to address issues raised for the first time in reply briefs, see United States v. Jerkins, 871 F.2d 598, 602 n.3 (6th Cir. 1987), and there is no reason for us to do so here; another panel of the court has now issued a published decision that would have required us to reject Mr. Bronaugh's challenge even if it had been timely. United States v. Williams, No. 94-5785, 1995 WL 296199 (6th Cir. May 17, 1995).
 
 
 9
 Bronaugh also argues that his sentence should be vacated and his case remanded for resentencing because the district court failed to rule on objections he made to his presentence investigation report. "When a defendant disputes findings in a presentence report, Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure requires the district court to make findings as to each disputed matter or to make a determination that no finding is necessary because the disputed matter will not be considered in sentencing." United States v. Decker, No. 91-4141, 1993 WL 424857, * * 3 (6th Cir. Oct. 19, 1993); accord United States v. Dunnigan, 113 S. Ct. 1111, 1117 (1993).
 
 
 10
 At his sentencing Mr. Bronaugh raised specific objections to portions of the presentence report recommending (1) that his offense level be increased not by two levels, as stipulated in his plea agreement, but by the four levels prescribed in U.S.S.G. Sec. 3B1.1(b) for the leader of a criminal activity involving five or more participants; (2) that he be classified as a career offender; and (3) that the court impose a fine, albeit below the guideline range. The district court decided not to impose a fine, and the career offender issue has now been resolved. The district court made no findings in response to the first objection, but made a four-level adjustment anyway.
 
 
 11
 Although the plea agreement did not bind the district court, the court erred in failing to make findings with respect to the disputed sentencing factor. United States v. Kemper, 908 F.2d 33, 37-38 (6th Cir. 1990); U.S.S.G. Sec. 6A1.3(b). The case must be therefore remanded, as the government concedes. On remand, the district court should consider whether the government has carried its burden of proving, by a preponderance of the evidence, that Mr. Bronaugh was a leader-organizer. United States v. Gonzalez, 929 F.2d 213, 216 (6th Cir. 1991).
 
 III
 
 12
 Defendant Royce objects to the quantity of drugs attributed to him for sentencing purposes. The district court's findings on this matter are subject to reversal only for clear error. United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 990 (1990).
 
 
 13
 Over a period of years, the record indicates, Mr. Royce purchased marijuana by the pound and cocaine by the kilogram for disposal through his own small distribution network. He was sentenced to imprisonment for a term of 168 months (the bottom of the guideline range), based on the 19 kilograms of cocaine seized on May 8 from the other conspirators.[3] U.S.S.G. Sec. 2D1.1(c)(5). Mr. Royce argues that there was no evidence that he himself ever dealt in more than one pound of marijuana or one kilogram of cocaine at a time, and he insists that he could not reasonably have foreseen a 19-kilogram shipment.
 
 
 14
 The Guidelines indicate that the sentence imposed should reflect only the amount of drugs directly attributable to the particular defendant. U.S.S.G. Sec. 1B1.3(a)(1)(B); United States v. Moss, 9 F.3d 543 (6th Cir. 1993). In this connection the district court may sentence a defendant "based upon quantities of drugs ... [which] by a preponderance of the evidence ... are attributable to him due to conduct of others involved in the conspiracy which was known to him or reasonably foreseeable to him." Id. at 552; see also United States v. Medina, 992 F.3d 573, 590-91 (6th Cir. 1993) (sentence vacated and remanded where district court attributed full quantity of drugs to minor conspirators without making findings that the amount was reasonably foreseeable by them). "Reasonable foreseeability refers to the scope of the agreement that [a defendant] entered into when he joined the conspiracy, not merely to the drugs he may have known about." United States v. Flores, 5 F.3d 1070, 1082 (7th Cir. 1993).
 
 
 15
 In the case at bar the district court correctly interpreted Moss to mean that where a conspirator could reasonably foresee that other members of the enterprise of which he was a part would be dealing in a particular quantity of drugs, that quantity could be attributed to him for sentencing purposes even without actual knowledge. Here sufficient evidence existed to show that these conspirators had dealt in multi-kilo lots before; that Mr. Royce knew about the scope of the conspiracy, and actually helped Mr. Bronaugh expand his sources of supply; that Mr. Royce was more than a mere street-dealer who bought by the ounce; and that even if he himself never touched more than a kilogram of cocaine at a time, there was a high probability that other members of the conspiracy were dealing in multi-kilo lots such as that which the FBI seized on May 8. The district court's findings in this regard were not clearly erroneous.
 
 IV
 
 16
 As to defendant Williams, the district court accepted provisions of the plea agreement that set Mr. Williams' base offense level for the conspiracy count at 34 and gave him a three-level reduction for acceptance of responsibility. The court granted a motion under U.S.S.G. Sec. 5K1.1. for a one-third downward departure from the guideline range based on Williams' cooperation with the government. The end result was a sentence of imprisonment for 125 months.
 
 
 17
 Mr. Williams argues that he assisted the government to such an extent that the district court abused its discretion in not according him a greater downward departure. "[A]n argument that the district court erred in exercising its discretion not to make a downward departure ... is not appealable within the provisions of 18 U.S.C. Sec. 3742." United States v. Dellinger, 986 F.2d 1042, 1044 (6th Cir. 1993). The same principle applies where the magnitude of a downward departure is at issue, see United States v. Gregory, 932 F.2d 1167 (6th Cir. 1991), and Mr. Williams' appeal will be dismissed for lack of jurisdiction.
 
 V
 
 18
 Finally, defendant Pujol contends that the jury's verdict is not supported by the evidence. He asserts that he was an unwitting dupe of the conspirators, and therefore lacked the requisite intent to participate in the conspiracy.
 
 
 19
 In reviewing claims of insufficient evidence, a court "should grant relief only if it is found ... that no rational trier of fact could have found proof of guilt beyond a reasonable doubt." United States v. Abner, 35 F.3d 251, 253 (6th Cir. 1994). The reviewing court must resolve all reasonable inferences from the evidence, as well as all conflicts in testimony, in the government's favor. United States v. Wolfenbarger, 427 F.2d 992 (6th Cir. 1970). Mr. Pujol fails to meet the "very heavy burden" required. United States v. Wright, 16 F.3d 1429, 1438 (6th Cir. 1994).
 
 
 20
 Mr. Pujol asserts that the five co-conspirators who testified that he actively participated in the conspiracy are not worthy of credence. Because this argument "merely goes to the weight a finder of fact may accord to testimony," it has little relevance to the appeal process. Wright, 16 F.3d at 1440. The jury was fully informed of the witnesses' guilty pleas and agreements to cooperate with the government, and the jury must be presumed capable of weighing the co-conspirators' testimony against Mr. Pujol's. United States v. Powell, 469 U.S. 57, 67 (1984). A rational trier of fact could well believe the co-conspirators rather than Mr. Pujol.
 
 
 21
 We AFFIRM the judgment of the district court as to defendants Pujol and Royce and DISMISS the appeal of defendant Williams for lack of jurisdiction. We VACATE the sentence of defendant Bronaugh and REMAND his case for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Odell Horton, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Bronaugh moved to Houston in 1992, but apparently continued to be involved in the activities of the drug ring
 
 
 [2]
 Career offender status requires that the defendant have "at least two prior felony convictions of either a crime or violence or a controlled substance offense." U.S.S.G. Sec. 4B1.1(3). In the light of our decision in United States v. McAdams, 25 F.3d 370 (6th Cir. 1994), Mr. Bronaugh has abandoned an argument that the prior two convictions were related and should have been treated as a single conviction
 
 
 [3]
 Mr. Royce's offense level was increased by two because he possessed a dangerous weapon. The level was reduced by three for acceptance of responsibility and cooperation with authorities, producing a total offense level of 33. Mr. Royce was in criminal history category III, which meant that his guideline range was 168 to 210 months. U.S.S.G. Sec. 5A